

1  NEIL F. MARTIN (CA Bar. No. 41,277

2  JOHN L. HALLER (CA Bar. No. 61392)
   SUSAN B. MEYER (CA Bar No. 204931)

3  GORDON & REES LLP
   101 West Broadway, Suite 1600
   San Diego, CA 92101

4  Telephone: (619) 696-6700
   Facsimile: (619) 696-7124

5  E-mail: nmartin@gordonrees.com
   jhaller@gordonrees.com

6  smeyer@gordonrees.com

7

FILED

2010 MAR 30  PM 3: 48

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  WEILAND SLIDING DOORS AND
    WINDOWS, INC., a California corporation,

12                          Plaintiff,

13                  v.

14  PANDA WINDOWS AND DOORS, LLC., a
    limited liability company of Nevada,

15

16                          Defendant.

17

'10 CV 0677   JLS  AJB

CASE NO.

**COMPLAINT FOR PATENT
INFRINGEMENT, INDUCEMENT OF
INFRINGEMENT, AND
CONTRIBUTORY INFRINGEMENT
OF PATENT NOS. 7,007,343 AND
6,792,651**

**DEMAND FOR JURY TRIAL**

18

19       Plaintiff, WEILAND SLIDING DOORS AND WINDOWS, INC., as and for its

20  Complaint against Defendant PANDA WINDOWS AND DOORS, LLC., alleges the following:

21       **JURISDICTION AND VENUE**

22       1.       This is an action for patent infringement arising under the patent laws of the

23  United States as set forth in 35 U.S.C. § 271, *et seq.*

24       2.       This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

25  §§ 1331, 1332 and 1338(a).

26       3.       This Court has personal jurisdiction over the Defendant by virtue of the fact that

27  its has availed itself of the forum by doing business here, by virtue of its actions of infringement

28

*(left margin)* Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

1    by sales of infringing product to California Customers, and by having conducted the acts giving

2    rise to this cause of action in the State of California and the Southern District of California.

3         4.    Venue is proper in the Southern District of California based upon 28 U.S.C.

4    §§1391 and 1400(b).

5                          **THE PARTIES**

6         5.    Plaintiff, Weiland Sliding Doors and Windows, Inc. ("Weiland"), is a

7    corporation organized under the laws of the State of California having its principal place of

8    business at 2601 Industry Street, Oceanside, California 92054.

9         6.    Upon investigation and information, Defendant Panda Doors and Windows,

10    LLC ("Defendant") is a corporation organized under the laws of Nevada having its corporate

11    offices at 3415 Bellington Road, N. Las Vegas, Nevada 89030.

12                          **BACKGROUND**

13                          *Weiland's Patents*

14        7.    Plaintiff, Weiland, designs, manufactures and sells premium quality doors and

15    windows.

16        8.    Weiland owns the entire right, title and interest to U.S. Patent No. 7,007,343

17    (the '343 Patent) and U.S. Patent 6,792,651 (the '651 Patent) a copy of the Patents are attached

18    hereto and incorporated herein as Exhibit "A" and Exhibit "B", respectively.  These patents

19    cover two of the inventions made by the long time CEO and owner of Weiland Sliding Doors

20    and Windows, Inc., William R. Weiland.  Mr. Weiland's experience in both the design and

21    manufacturing of high end Sliding Doors and Windows makes him an expert on the State of the

22    Art in sliding door design and especially on the variant of sliding doors which are identified as

23    "lift and slide" doors.  Doors with the lift and slide capability are the ones most likely to

24    incorporate the drainage system protected by the patents.

25        9.    Weiland sells commercial embodiments incorporating the patented design of the

26    '343 and the '651 Patents from their facility in Oceanside.

27        10.    The aforementioned infringement of the patented designs are subject to

28    infringement remedies under 35 U.S.C. § 271, *et seq.*

Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

11.     Plaintiff Weiland has duly complied with the provisions of the Patent Laws of the United States in connection with the aforementioned patents.

### Defendant's Infringing Activities

12.     Upon investigation and information, Defendant assembles, offers for sale, sells, and distributes windows and doors throughout the United States, including in this judicial district.

13.     Defendant is not an authorized dealer of Weiland.

14.     Defendant has transacted and continues to transact business in, and regularly has solicited and regularly continues to solicit business in this judicial district.

15.     Defendant has offered for sale and sold, and continues to offer for sale and sell tracks that have identical drainage systems ("Accused Product") to the system which Weiland protected by the '343 and the '651 patents, throughout the United States, including in this judicial district.

16.     Defendant is on actual notice of Weiland's patent rights.

17.     Weiland, on information and belief, asserts that Defendant knew of Weiland's patent rights from the time of the first such product manufactured by Defendant, in part, because the products of Defendant appear to be copies of those from Weiland.

18.     Upon investigation and information, Defendant derives substantial revenue from selling its products in interstate commerce.

19.     Defendant provides information to its customers on the combination of track, drainage system and doors in such a manner as to actively induce infringement of the Plaintiff's patents.

20.     Defendant sells components of the patented combination constituting of a material part of the invention with the knowledge that the component is especially made or adapted for use in a infringement of the patent, such component not being a staple article of commodity of commerce suitable for substantial non-infringing use.

21.     Defendant's conduct causes damage to Weiland in California and in the Southern District of California.

Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

## FIRST CAUSE OF ACTION

*(INFRINGEMENT OF U.S. PATENT NOS. 7,007,343 and 6,792,65 )*

22.    Plaintiff Weiland re-alleges each and every allegation set forth in paragraphs 1 through 21 above, and incorporates them herein by reference.

23.    Defendant has infringed the '343 and the '651 Patents by, offering for sale and/or selling sliding doors incorporating the features of the patents under the designation lift and slide doors as shown on Defendants web panda-windows.com and in the brochures available their exemplified by the products in the downloadable brochure and attached hereto as Exhibit "C." The brochure clearly shows the use of a "drainage track" as in Weiland's products and patent. Therefore Defendant is using the protected design covered by the claims of the '343 and the '651 Patent, in the United States and specifically in this Southern District of California, and will continue such infringement unless enjoined by this Court.

24.    As a result of Defendant's acts, Weiland has been damaged and will continue to be damaged.

25.    Defendant's infringement of the '343 and '651 Patents has been knowing and willful and constitutes a violation of 35 USC § 271 (a).

26.    Defendant's infringement of the '343 and '651 Patents has damaged Weiland in an amount that is unknown and cannot at the present time be fully ascertained.

27.    Unless enjoined by this court, Defendant will continue to infringe Plaintiff's patent rights causing irreparable injury. Weiland has no adequate remedy at law.

## SECOND CAUSE OF ACTION

*(INDUCEMENT OF INFRINGEMENT OF U.S. PATENT NOS. 7,007,343 and 6,792,651 )*

28.    Plaintiff Weiland re-alleges each and every allegation set forth in paragraphs 1 through 18 and 21 above, and incorporates them herein by reference.

29.    Defendant has induced and is inducing infringement of the '343 and the '651 Patents by advertising, promoting, providing instructions and brochures on the assembly, installation use, and sale of the patented inventions in such a manner as to actively induce

COMPLAINT FOR PATENT INFRINGEMENT, INDUCEMENT OF INFRINGEMENT AND CONTRIBUTORY INFRINGEMENT

Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

1    infringement of the Plaintiff's patents in the United States and specifically in this Southern

2    District of California, and will continue such infringement unless enjoined by this Court.

3        30.    As a result of Defendant's acts, Weiland has been damaged and will continue to

4    be damaged.

5        31.    Defendant's inducement of infringement of the '343 and '651 Patents constitutes

6    a violation of 35 USC § 271 (b).

7        32.    Defendant's inducement of infringement of the '343 and '651 Patents has

8    damaged Weiland in an amount that is unknown and cannot at the present time be fully

9    ascertained.

10       33.    Unless enjoined by this court, Defendant will continue to infringe Plaintiff's

11   patent rights causing irreparable injury.  Weiland has no adequate remedy at law.

## THIRD CAUSE OF ACTION

*(CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NOS. 7,007,343 and 6,792,6 )*

14       34.    Plaintiff Weiland re-alleges each and every allegation set forth in paragraphs 1

15   through 18 and 20 above, and incorporates them herein by reference.

16       35.    Defendant has sold and continues to sell in the United States components that

17   are a material part of the patented drainage system of the '343 and the '651 Patents knowing the

18   same specially adapted for use in an infringement of the patents and which components are not

19   a staple item of commerce suitable for substantial non-infringing use.

20       36.    As a result of Defendant's acts, Weiland has been damaged and will continue to

21   be damaged.

22       37.    Defendant's contributory infringement of the '343 and '651 Patents constitutes a

23   violation of 35 USC § 271 (c).

24       38.    Defendant's contributory infringement of the '343 and '651 Patents has damaged

25   Weiland in an amount that is unknown and cannot at the present time be fully ascertained.

26       39.    Unless enjoined by this court, Defendant will continue to infringe Plaintiff's

27   patent rights causing irreparable injury.  Weiland has no adequate remedy at law.

28   / / /

COMPLAINT FOR PATENT INFRINGEMENT, INDUCEMENT OF INFRINGEMENT AND CONTRIBUTORY INFRINGEMENT

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, Weiland, prays for judgment against the Defendant granting the Plaintiff:

(a)     A preliminary and permanent injunction against Defendant, its parent company, subsidiaries, related companies, and all persons acting in concert or participation with them, or persons acting or purporting to act on their behalf, including, but not limited to their officers, directors, partners, owners, agents, representatives, employees, attorneys, successors, and assigns from infringing the '343 and the '651 Patents as provided in 35 U.S.C. § 283, *et seq.*

(b)     A finding that Defendant has infringed the '343 and the '651 Patents.

(c)     An accounting of damages resulting from the infringement of the '343 and the '651 Patents by Defendant as provided in 35 U.S.C. § 284.

(d)     An award to Plaintiff Weiland of damages, in an amount yet to be ascertained, resulting from the infringement of the '343 and the '651 Patents by Defendant as provided in 35 U.S.C. §§ 271 and 284.

(e)     A finding that Defendant's infringement of Weiland's '343 and the '651 Patents was willful, wanton and intentional, and an award treble damages, costs and interest under inter alia, 35 U.S.C. § 284.

(f)     An award to Plaintiff Weiland of any additional remedies from infringement of the '343 and the '651 Patents by Defendant as provided in 35 U.S.C. § 289.

(g)     An award of Plaintiff's attorney's fees and costs incurred in this action because of the exceptional nature of the infringement under, inter alia, 35 U.S.C. § 285.

(h)     That Defendant be required to cancel any purchase orders for infringing products and destroy all inventory of the same; and

/ / /
/ / /
/ / /
/ / /
/ / /

Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

COMPLAINT FOR PATENT INFRINGEMENT, INDUCEMENT OF INFRINGEMENT AND CONTRIBUTORY INFRINGEMENT

1    (i)    Such other and further relief as the Court may deem just and equitable under the

2  circumstances herein.

3

4  Dated:  March 30, 2010

5

Respectfully submitted,



6  GORDON & REES LLP
   NEIL F. MARTIN (CA Bar. No. 41,277)
7  JOHN L. HALLER (CA Bar No. 61392)
   SUSAN B. MEYER (CA Bar No. 204931)
8  101 West Broadway, Suite 1600
   San Diego, CA 92101
9  Telephone: (619) 696-6700
   Facsimile: (619) 696-7124
10 E-mail: nmartin@gordonrees.com;
   jhaller@gordonrees.com
11 smeyer@gordonrees.com

12 Attorneys For Plaintiff WEILAND SLIDING
   DOORS AND WINDOWS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

COMPLAINT FOR PATENT INFRINGEMENT, INDUCEMENT OF INFRINGEMENT AND CONTRIBUTORY INFRINGEMENT

1

## PLAINTIFF'S JURY DEMAND

2      Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Plaintiff Weiland

3   Sliding Doors and Windows, Inc. hereby demands a jury trial of all issues triable to a jury.

4                                      Respectfully submitted,

5   Dated:  March 30, 2010          

6                                      GORDON & REES LLP
7                                      NEIL F. MARTIN (CA Bar. No. 41,277)
                                       JOHN L. HALLER (CA Bar No. 61392)
8                                      SUSAN B. MEYER (CA Bar No. 204931)
                                       101 West Broadway, Suite 1600
9                                      San Diego, CA 92101
                                       Telephone: (619) 696-6700
10                                     Facsimile: (619) 696-7124
                                       E-mail: nmartin@gordonrees.com;
11                                     jhaller@gordonrees.com
                                       smeyer@gordonrees.com
12
                                       Attorneys For Plaintiff WEILAND SLIDING
13                                     DOORS AND WINDOWS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -

Gordon & Rees LLP
101 West Broadway, Suite 1600
San Diego, CA 92101

US007007343B2

(12) **United States Patent**     (10) Patent No.:     **US 7,007,343 B2**
Weiland et al.                    (45) Date of Patent:     *Mar. 7, 2006

(54) **IN-FLOOR, ADJUSTABLE, MULTIPLE-CONFIGURATION TRACK ASSEMBLY FOR SLIDING PANELS WITH BUILT-IN WEEP SYSTEM**

(75) Inventors: **William R. Weiland**, Encinitas, CA (US); **Robert A. Ulibarri**, Carlsbad, CA (US)

(73) Assignee: **Weiland Sliding Doors & Windows, Inc.**, Oceanside, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/916,562**

(22) Filed: **Aug. 11, 2004**

(65) **Prior Publication Data**

US 2005/0005395 A1     Jan. 13, 2005

**Related U.S. Application Data**

(63) Continuation of application No. 10/185,942, filed on Jun. 27, 2002, now Pat. No. 6,792,651.

(51) **Int. Cl.**
*A47H 15/00*     (2006.01)
*E05D 15/16*     (2006.01)
(52) **U.S. Cl.** ..................................... **16/96 R**; 16/102
(58) **Field of Classification Search** ............... 16/96 R, 16/95 R, 93 R, 94 R, 87 R, 87.4 R, 102; 49/408–409, 404, 410, 411; 312/349; 52/218–219, 52/204.54, 204.5, 204.71; 160/194, 197, 160/201, 204–207; 4/601–610
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 204,006 A | * | 5/1878 | Condict, Jr. .............. 238/10 R |
| 3,938,621 A | * | 2/1976 | Bobbitt, Jr. ................. 184/1.5 |
| 4,073,035 A | * | 2/1978 | Baus ......................... 16/96 R |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 3600133 C1 | * | 1/1987 |
| EP | 904721 A1 | * | 3/1999 |
| JP | 04336191 A | * | 11/1992 |
| JP | 05214880 A | * | 8/1993 |
| JP | 2000129741 A | * | 5/2000 |
| JP | 2000129742 A | * | 5/2000 |

(Continued)

*Primary Examiner*—Chuck Y. Mah
(74) *Attorney, Agent, or Firm*—Morrison & Foerster LLP

(57)     **ABSTRACT**

In-floor, adjustable, track assembly for sliding panels with a build-in weep system, including a track, extending upward from a base, for engaging the undercarriage of a vertically-oriented panel, and supporting rectilinear motion therealong, an upright splash guard, parallel to and spaced slightly apart from one side of the upright track and forming, with the track, a channel therebetween with the base, for directing moisture from the bottom of the panel into the channel, at least one collection pan mounted under the channel and accessible through an aperture to collect moisture from the channel, and a hose for drawing off the moisture from the channel.

**13 Claims, 5 Drawing Sheets**



**US 7,007,343 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,208,755 A | * | 6/1980 | Shepherd | 15/160 |
| 5,136,814 A | * | 8/1992 | Headrick | 49/468 |
| 5,179,804 A | * | 1/1993 | Young | 49/471 |
| 5,341,600 A | * | 8/1994 | Heppner | 49/471 |
| 5,671,501 A | * | 9/1997 | Laramie | 16/96 R |
| 5,826,387 A | * | 10/1998 | Henderson et al. | 52/295 |
| 6,170,207 B1 | * | 1/2001 | Saindon | 52/204.2 |
| 6,216,405 B1 | * | 4/2001 | Smith | 52/235 |
| 6,371,188 B1 | * | 4/2002 | Baczuk et al. | 160/92 |
| 6,619,004 B1 | * | 9/2003 | Loper | 52/302.1 |

### FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | | 2000212915 A | * | 8/2000 |

* cited by examiner



Figure 1

EXHIBIT A, PAGE 3



Figure 2



Figure 2a          Figure 2b

EXHIBIT A, PAGE 4



Figure 3



Figure 4

Figure 5

Figure 6



Figure 7



Figure 8

US 7,007,343 B2

1

### IN-FLOOR, ADJUSTABLE, MULTIPLE-CONFIGURATION TRACK ASSEMBLY FOR SLIDING PANELS WITH BUILT-IN WEEP SYSTEM

#### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 10/185,942 filed Jun. 27, 2002, entitled "In-Floor Adjustable, Multiple-Configuration Track Assembly For Sliding Panels With Built-In Weep System."

#### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to the field of sliding door assembly and installation. More particularly, the invention pertains to a novel floor support system for sliding glass or non-glass panels, that act as doors or room dividers, and to a system for supporting them on a floor-level track including means for draining off water that accumulates on the floor or on either side of the door.

2. Description of the Related Art

Traditional devices undergo change as our culture matures. The common door, mounted on hinges along one vertical side and arranged to swing through an arc, has given way in part to panels that slide on tracks and disappear into walls, sandwich with other such panels, spread apart to divide a room, or give access from one room to another. In many cases, a plurality of glass panels slides on a single track or on separate, but closely parallel, tracks to form a temporary wall, to divide a room into smaller rooms, or to provide an opening from one room onto a balcony, onto a patio, onto a swimming pool area and the like.

A significant problem with these types of sliding panels occurs where one side of the panels faces outside the home or building toward the elements. Rain, sleet or snow hitting the glass and panel is drawn downward by gravity so that it puddles at the bottom of the panel and, when in great enough quantities, spills over onto the tracks upon which the panels are mounted for sliding movement. In other situations, the floor on one side of the track is slanted such that rain or melted snow runs toward the track. Once the moisture reaches the tracks, problems develop because of the many directions the moisture may flow. For instance, it sometimes flows under the panel and into a room wetting carpets and rugs that thereafter become stained, crispy, or develop an organic growth that causes bad odors and attracts insects. The moisture sometimes flows outward from the panel and stains concrete or causes deterioration of cement and wood flooring, or corrodes the glue that holds down floor coverings such as linoleum, parquet, and vinyl squares.

Often the moisture draws dirt, dust, small insects and bits of leaves and flowers toward the track system. Accumulation of this debris causes the wheels mounted on the panels to become harder to rotate and, in severe cases, seize and refuse to turn, making the panel difficult to move in its intended path. Cleaning these tracks is often difficult and all the debris is rarely removable due to the closeness of the tracks. Often, the panels must be removed and this can be a difficult task. In winter seasons, the moisture often freezes thereby anchoring the panel to its present position and eliminating the desirability of having slidable panels in the first place.

In severe cases, the moisture puddles in the tracks and the subfloor on which the tracks are mounted is weakened. Concrete will crack under freezing and thawing of water and

2

wood beams and wood floors can become weakened by constant exposure to water. Often, the mere beginning of such damage will cause tilting of the tracks and unbalancing of the load of the panels so that they refuse to slide easily along the tracks. Accordingly, it is desirable to provide a system that will capture the moisture and convey it from the track system before such problems begin to develop.

#### SUMMARY OF THE INVENTION

This invention is an in-floor, adjustable, track assembly for sliding panels with a built-in weep system to collect and thereafter remove the moisture from the track area where, when installation is complete, the exposed surface of the track is minimal resulting in a smooth transition from interior to exterior. It is useful on single or multiple track systems in areas that are divided by the panels into an exterior or outside section and an interior or inside section. This system finds use where the tracks are mounted on a base, are single tracks or are in closely spaced-apart, parallel arrangement and extend upward from the base for engaging the undercarriage of at least two vertically-oriented panels in close arrangement.

The invention provides for splash guards arranged parallel to and spaced slightly apart from one side of each track, preferably the interior area, and forming, with each track, a channel with the base, for collecting moisture from the floor. At least one collection pan is mounted under each channel, to collect moisture from the channel, and includes a tube or other means to draw off the moisture from the collection pan to a distant location.

Much of the invention is formed of extruded metal, such as aluminum, so that the cost of construction is minimized. Further, the invention is fully adjustable in vertical, as well as horizontal, directions so that it can be placed in new construction and installed in existing construction as well. Other parts are made of plastic and rubber so that the entire system is generally free from problems of corrosion even in the face of constant exposure to moisture.

Accordingly, the main object of this invention is an in-floor, adjustable, track assembly for sliding panels with a built-in weep system that will remove moisture that flows across the floor, and possibly across the track, or that trickles down the sliding panels to puddle at the bottom thereof. Another object of the invention is a fully adjustable track assembly that may be adjusted to compensate for warpage, weakness, and misalignment of walls with floors to allow the panels to slide effortlessly over the track.

These and other objects of the invention will become more apparent when reading the subsequent Description of the Preferred Embodiment taken together with the drawings appended hereto. The scope of protection desired by the inventor may be gleaned from a fair reading of the claims that conclude this Specification.

#### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an illustrative view of a single track and weep system according to this invention;

FIG. 2 is a sectional view taken through the single track and weep system shown in FIG. 1 depicting the narrow moisture collection channel of this invention;

FIGS. 2a and 2b are small sectional views of two materials useful in the narrow moisture collection channel;

FIG. 3 is an illustrative view of a multiple track and weep system according to this invention;

EXHIBIT A, PAGE 8

US 7,007,343 B2

3

FIG. 4 is a cross-sectional view of the rail of this invention showing the moisture collection pan mounted underneath;

FIG. 5 is an illustrative view of the moisture collection pan of this invention;

FIG. 6 is a sectional view of the track and rail of this invention taken orthogonally to the view of FIG. 2;

FIG. 7 is an illustrative view of the side mounting tab formed on the rails of this invention; and,

FIG. 8 is a perspective view of a moisture trap used in this invention.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENTS

Turning now to the drawings, wherein elements are identified by numbers and like elements are identified by like numbers throughout the ten figures, FIG. 1 shows the in-floor, adjustable, single configuration track assembly 1 for a sliding panel with a built-in weep system of this invention to comprise a narrow, elongated track 3 extending upward from a base 5, slightly above the top surface 7 of finished floor 9 for engaging the undercarriage wheels 13 of a panel 15 (wheels 13 and panel 15 are shown in phantom outline) and supporting panel 15 while it is in motion, such as in rectilinear motion, on track 3. As shown in FIGS. 1 and 2, it is preferred that track 3 is an upright, elongated, narrow-gauge metal plate forming an inverted "T" shape with base 5. Track 3 includes a shaped top surface with small, lateral undercuts 17 for smooth engagement with wheels 13, that extend downward from the bottom of panel 15. Panel 15 has a stout perimeter 19 of metal or wood construction, panel inserts of glass or wood, and generally is quite heavy. It is preferred that track 3 be extruded, such as from aluminum or other extrudable metal, in a single piece with base 5. Such extrusion further includes flanges 21, extending outward from both sides of base 5.

FIG. 3 shows an in-floor, adjustable, multiple configuration track assembly for a plurality of sliding panels 15 (not shown), each with a built-in weep system of this invention, and shows a plurality of narrow, elongated tracks 3 in closely spaced-apart, parallel arrangement, each track 3 extending upward from a separate base 5, for engaging and supporting the undercarriage of at least one panel on each track 3 while said panels are in motion, such as rectilinear motion, thereon. It is important to this invention that track 3 top surface 17 protrudes or extends slightly above finished floor top surface 7 (see FIG. 2) to form a slight barrier to transverse flow of water or moisture across track 3 from the exterior area to the interior area.

As shown in FIGS. 1–4, an upright splash guard 25 is provided for each of narrow tracks 3, parallel to and spaced slightly apart therefrom a distance sufficient to capture moisture either dripping or running off panel 15, shown as drops 27, or running across finished floor top surface 7 and over the top of track 3 from the exterior area toward the interior area. Splash guard 25 forms, with each track 3 and base 5, a narrow channel 29 for collecting moisture from the bottom of each panel 15. When used herein, the term "moisture" means rain, sleet, snow, and water splashed from swimming pools, hoses and the like. Moisture is shown as angled straight lines in the exterior area in FIG. 2. As shown in FIG. 2, track 3 and splash guard 25 are both upright, elongated, narrow-gauge plates and, together, form an inverted "T" shape with base 5. In addition, it is preferred that splash guard 25 terminates or "tops" at finished floor top surface 7 so that the entire assembly is at or below top surface 7, except for a slight upward protrusion of track top

4

surface 17 and thus forms a very smooth, uninterrupted top floor surface. This configuration conforms to the requirements of the Americans with Disabilities Act (42 U.S.C §12100 et sec.). Since splash guard 25 and track 3 together form a substantially inverted "T" with base 5, it is preferred that they all be extruded together in one monolithic piece from metal such as aluminum. If not possible, it is preferred that track 3 and base 5 be extruded as one piece and splash guard 21 installed, as shown, and soldered or otherwise rigidly mounted in base 5.

A filter means 31 is located in said channel 29 for preventing the ingress of debris. As shown in FIG. 2a, filter means 31 may take the form of a strip of highly reticulated plastic foam 33 cut and inserted into channel 29. As shown in FIG. 2b, a piece of screen 37 may be cut and folded in a shape and slipped into channel 29. Not only do these means prevent the ingress of debris while also not interfering with the collection of moisture, they also are easily removed so that they can be renewed without significant cost or effort.

As shown in FIGS. 4 and 5, at least one collection pan 39 is mounted under each channel 29 and is accessible through at least one aperture 41 formed in the bottom of channel 29, preferably at the bottom of channel 29 in base 5. Collection pan 39 collects moisture that runs down into channel 29. Collection pan 39 is preferably made from plastic, such as polyvinyl chloride, polyvinylidene chloride, polyethylene, and the like, and can be easily injection molded to reduce the cost of production. As shown in FIGS. 4 and 5, collection pan 39 comprises enclosed sidewalls 43, a closed bottom 45, and an open top cavity 49 formed therein. Sidewalls 43 are attached through gaskets 51, along their top surfaces, to the bottom surface 53 of base 5 and cavity 49 is preferably arranged directly below aperture 41 to receive moisture as it drops from the panels into channel 29 and through filter means 31. An opening 55, preferably located in or near collection pan bottom 45 is provided and egress means 55, preferably located in or near collection pan bottom 45 is provided and egress means 57, such as a hose or tube 61, is attached thereto to draw off the moisture from the bottom of said panels.

As shown in the Figures, at least two track support rails 63 are provided, in spaced-apart arrangement, running transversely underneath tracks 3, splash guards 25, and bases 5. As further shown in FIG. 6, rails 63 extend outward, in orthogonal arrangement from track bases 5 and each rail 63 includes a rail body 65, defined by a bottom surface 67 and a top surface 69. A pair of alignment clamps 73a and 73b are provided for each track, for assembly with rails 63 to fasten each track to each rail. As shown in FIG. 1, the alignment between tracks 3 and rails 63 is orthogonal, i.e., each track is adjusted to be as close as possible to perpendicular from each rail. Each clamp 73a and 73b includes a bottom clamp surface 75, a portion 77 of which is shaped for overlapping contract with a curb 79a and 79b formed on track flanges 21 on both sides of track 3.

As shown in FIG. 6, a C-shaped groove 81 is formed in track support rail body 63 opening upward through a slot 83 formed in rail body top surface 69. An aperture 87 is formed in alignment clamps 73a and 73b for arrangement over upwardly opening C-shaped groove 81. As shown in FIGS. 3 and 6, clamps 73a and 73b are assembled with track 3 and track support rail 63 such that track 3 is overlaid rail 63 and clamps 73a and 73b placed on rail 63, one on each side thereof, with portion 77 of clamp bottom surface 75 overlaying flange 21 with slot 85 aligned with aperture 87.

A threaded means 89, such as a flat headed bolt or machine screw 91, is inserted down through aperture 87,

EXHIBIT A, PAGE 9

US 7,007,343 B2

5 6

through slot **85**, and into a bolt-capturing nut **93** located in C-shaped groove **81**. Nut **93** is wider than slot **85** but smaller than the maximum internal width of C-shaped groove **81** so that it is captured in groove **81** yet is slightly moveable therein. It is preferred that the outside diameter of bolt **91** be made slightly less than the width of slot **85** to allow for some movement between bolt **91**, track **3** and rail **63**. This slight looseness allows track **3** and rail **63** to be adjusted horizontally in the floor on which track **3** will be mounted and further allows track **3** and rail **63** to be brought as close as possible to orthogonal arrangement during assembly. It is preferred that bolt **91** have a flat heat with conical sides, as shown in FIG. **6**, and aperture **87** in clamps **73a** and **73b** have a top chamfer to accept the flat bolt head so that the flat head of bolt **91** will lie flush with the top surface of alignment clamps **73a** and **73b**.

To aid the location of alignment clamps **73a** and **73b** on top surface **69** of track support rail **63**, as shown in FIG. **6**, it is preferred that a pair of upsets or curbs, **97a** and **97b**, be formed in spaced-apart arrangement on track support trail top surface **69** that, together, form a wide, substantially "U"-shaped depression **99** in rail top surface **69**. Alignment clamps **97a** and **97b** are preferably made just wide enough to fit into said depression **99** and aligned therein for assembly with track **3** and rail **63** to prevent the clamps from moving about when the assembly is subjected to the movement of panels **15** on tracks **3**.

As shown in FIGS. **3** and **7**, a side mounting tab **101** is formed as an extension on the ends of track support rails **63**. An adjustment/mounting slot **103** is formed in rail body **65**, preferably at the center of C-shaped groove **81**, and through the bottom of rail body **65**. As shown in FIG. **6**, an elongated, slightly V-shaped indentation **105** is formed in the upper surface of the bottom surface of groove **81** and, preferably, along the center-line of rail bottom surface **67** for aiding in aligning a drill bit to drill through the bottom of rail body **65** in order to center the drill bit used in forming adjustment mounting slot **103**.

As shown in FIG. **2**, in assembling tracks **3** and rails **63** on the surface wherein the panels are to slide, a first pair of threaded studs **109** is mounted in the cement subfloor **11** or in the wood subfloor or other support surface, in spaced-apart arrangement, a distance equal to the distance between adjusting/mounting slots **103** that are formed at each end of rail **63**, and along an axis orthogonal to the axis of intended travel of the panels. Rail **63** is then set down on studs **109** and is shimmed to level. A first pair of bolt-capturing nuts **113** is then placed in threaded engagement on studs **109** and tightened down against that portion of rail body **65** at the bottom of C-shaped groove **81** and fastened into place to provide rigid support for the entire assembly. Tracks **3** are then placed on top of rails **63** and alignment clamps **73a** and **73b** are placed on rail top surface **69**, one on each side of track **3** and partially overlapping onto track flanges **21**. Flatheaded bolts or machine screws **91** are then inserted into clamp aperture **87** and passed down into threaded receipt in bolt-capturing nuts **93** that are first slipped inside C-shaped groove **81**, in rail body **65**. Nuts **93** are then tightened down to rigidify the assembly. It is preferred that tracks **3** be orthogonal or perpendicular to rails **63** when the full assembly is rigidified. As shown in FIGS. **3** and **4**, collection pans **39**, already mounted under rails **63** are connected to hoses **61** to be passed through holes in the sub-floor, preferably to an outside vent for removing the collected moisture from tracks **3**.

As shown in FIGS. **3** and **8**, a trap **115** may be located transversely between at least two adjacent tracks **3** that are

in closely spaced-apart, passing arrangement, in order to collect the moisture that impacts the ends of panels **15** and runs down toward the underlying tracks **3**. Panel perimeters **19** often are wide in order to support heavy panel inserts, such as glass panes and wood sheeting. This transverse thickness of the perimeter presents a rather broad surface for moisture to impact and trickle downward. Trap **115** is shown in FIG. **8** to comprise a pair of closely spaced-apart, parallel walls **117** and **119** and a closed base **123** forms an open top U-shaped duct **125** therebetween. A pair of outwardly directed positioning slots **127a** and **127b** are formed in base **123** for sliding over inwardly-facing flanges **21** on the two adjacent track bases **5**. Mounted along the top of wall **117** is a pliable seal **129** for the purpose of contacting panel undercarriage **13** to seal trap **115** against leakage of moisture entering duct **125**. Filter means **31**, as previously disclosed, may also be inserted in duct **125** to prevent the ingress of debris along with the entrance of moisture. At least one collection pan **39** is mounted under each transverse trap **115** and is accessible through an aperture **87**, located at the bottom of duct **125** to pass moisture from duct **129** to an egress means **57**, such as hose **61**, as previously disclosed.

As shown in FIG. **2**, sub-floor **111** is thereafter encased, about its sides and underneath, with additional sub-floor **131**, in preparation of the laying of final or finished floor **9** that closes off a view of the invention except for a small upper portion of tracks **3** and the very top of splash guard **25**.

In some instances, splash guard **25** and narrow channel **29** may be located on the exterior area of the assembly, however, it is preferred that they be located on the interior area of the assembly.

While the invention has been described with reference to a particular embodiment thereof, those skilled in the art will be able to make various modifications to the described embodiment of the invention without departing from the true spirit and scope thereof. It is intended that all combinations of elements and steps which perform substantially the same function in substantially the way to achieve substantially the same result are within the scope of this invention.

What is claimed:

1. An in-floor, adjustable, track assembly with built-in weep system for sliding panels comprising:
   a) a base having a track extending upward therefrom, slightly above a finished floor level, and arranged to engage undercarriage wheels of at least one vertically-oriented panel and support motion of said panel therealong to divide an area about said track into an exterior section and an interior section;
   b) an upright splash guard, located parallel to and spaced slightly apart from said track, in said interior section of said area, and topping at the level of the finished floor, said splash guard forming an open-top channel with said track and said base, for collecting moisture therein;
   c) at least one collection pan mounted under said channel, in communication with said channel, to collect moisture from said channel;
   d) a conduit coupled to said collection pan for drawing off the moisture from said collection pan; and,
   e) a filter positioned in said channel for preventing the ingress of debris into said channel and said collection pan.

2. An in-floor, adjustable, track assembly with built-in weep system for sliding panels comprising:
   a) a base having a track extending upward therefrom, slightly above a finished floor level, and arranged to engage undercarriage wheels of at least one vertically-oriented panel and support motion of said panel the-

US 7,007,343 B2

7                                                                        8

realong to divide an area about said track into an exterior section and an interior section;

b) an upright splash guard, located parallel to and spaced slightly apart from said track, in said interior section of said area, and topping at the level of the finished floor, said splash guard forming an open-top channel with said track and said base, for collecting moisture therein;

c) at least one collection pan mounted under said channel, in communication with said channel, to collect moisture from said channel;

d) a conduit coupled to said collection pan for drawing off the moisture from said collection pan; and,

e) wherein said base includes flanges extending outward on both sides thereof.

3. An in-floor, adjustable, track assembly with built-in weep system for sliding panels comprising:

a) a base having a track extending upward therefrom, slightly above a finished floor level, and arranged to engage undercarriage wheels of at least one vertically-oriented panel and support motion of said panel therealong to divide an area about said track into an exterior section and an interior section, the base further comprising at least one flange extending outwardly from at least one side of the base;

b) an upright splashguard, located parallel to and spaced slightly apart from said track, in said interior section of said area, and topping at the level of the finished floor, said splash guard forming an open-top channel with said track and said base, for collecting moisture therein;

c) at least one collection pan mounted under each said channel, in communication with said channel, to collect moisture from said channel;

d) an aperture formed in said collection pan for allowing moisture to exit from said collection pan;

e) a flexible tube connected to said aperture for directing the moisture away from said collection pan;

f) at least one support rail configured to be positioned underneath said base; and

g) at least one alignment clamp configured to engage at least a portion of the at least one flange and the at least one support rail, thereby facilitating alignment of the track assembly in a desired direction.

4. A track assembly for a sliding panel comprising:

a) a base having a track extending upward therefrom to engage said sliding panel so as to guide linear movement of said sliding panel, the base further comprising at least one flange extending outwardly from at least one side of the base;

b) an aperture in said base for draining moisture from a top surface of said base;

c) a flexible tube coupled to said aperture for diverting said moisture to a desired location; and

d) at least one support rail configured to be positioned underneath said base; and

e) at least one alignment clamp configured to engage at least a portion of the at least one flange and the at least one support rail, thereby facilitating alignment of the track assembly in a desired direction.

5. The track assembly for a sliding panel of claim 4, further including a collection pan mounted under said aperture, to collect said moisture from said base, wherein the collection pan further includes a second aperture connected to said flexible tube for diverting said moisture to a desired location.

6. The track assembly for a sliding panel of claim 4, further including an upright splash guard, spaced slightly apart from and parallel to said track so as to form an open-top channel between said track and said base, for collecting moisture therein.

7. The track assembly for a sliding panel of claim 6, further including a filter positioned in said channel for preventing the ingress of debris into said channel.

8. The track assembly for a sliding panel of claim 4, further including means for securing said track assembly to the floor.

9. A track assembly for sliding panels comprising:

a) two parallel bases, each having a track extending upward therefrom to respectively engage two sliding panels so as to guide linear movement of said sliding panels;

b) a trap coupled transversely between said tracks for collecting moisture from said sliding panels;

c) wherein said trap includes two parallel trap walls, spaced slightly apart and extending upwardly from a base of said trap so as to form an open-top channel between said trap walls and said trap base, for collecting said moisture therein; and

d) egress means for drawing off said moisture from said trap channel.

10. The track assembly for sliding panels of claim 9, further including filter means inserted in said trap channel for preventing the ingress of debris into said trap channel.

11. The track assembly for sliding panels of claim 9, further including a pliable seal mounted on the top of at least one of said trap walls so as to seal a bottom surface of a respective one of said sliding panels to said trap.

12. The track assembly for sliding panels of claim 9, wherein said egress means for drawing off said moisture from said trap channel includes a trap aperture coupled to said trap channel for diverting said moisture to a desired location.

13. The track assembly for sliding panels of claims 12, further including a flexible tube coupled to said trap aperture for diverting said moisture to a desired location.

* * * * *



US006792651B2

(12) **United States Patent**

Weiland et al.

(10) Patent No.: **US 6,792,651 B2**

(45) Date of Patent: **Sep. 21, 2004**

(54) **IN-FLOOR, ADJUSTABLE, MULTIPLE-CONFIGURATION TRACK ASSEMBLY FOR SLIDING PANELS WITH BUILT-IN WEEP SYSTEM**

(76) Inventors: **William R. Weiland**, 2042 Sheridan, Encinitas, CA (US) 92024; **Robert A. Ulibarri**, 8018 Sitio Caucho, Carlsbad, CA (US) 92009

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 80 days.

(21) Appl. No.: **10/185,942**

(22) Filed: **Jun. 27, 2002**

(65) **Prior Publication Data**

US 2004/0000027 A1 Jan. 1, 2004

(51) Int. Cl.[7] ........................ A47H 15/00; E05D 15/16
(52) U.S. Cl. ........................................ 16/102; 16/96 R
(58) Field of Search .............................. 16/96 R, 93 R, 16/94 R, 95 R, 87 R, 87.4 R, 1.2; 49/408, 409, 404, 410, 411; 312/349; 52/218, 219, 204.54, 204.5, 204.71; 160/194, 197, 201, 204–207; 4/601–610

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 204,006 | A | * | 5/1878 | Condict, Jr. | .............. 238/10 R |
| 4,073,035 | A | * | 2/1978 | Baus | ........................... 16/96 R |
| 4,208,755 | A | * | 6/1980 | Shepherd | ................... 15/160 |
| 4,358,863 | A | * | 11/1982 | Jacobsen | ...................... 4/607 |
| 5,136,814 | A | * | 8/1992 | Headrick | .................. 49/468 |
| 5,179,804 | A | * | 1/1993 | Young | ....................... 49/471 |
| 5,341,600 | A | * | 8/1994 | Heppner | ................... 49/471 |
| 5,671,501 | A | * | 9/1997 | Laramie | .................. 16/96 R |
| 6,371,188 | B1 | * | 4/2002 | Baczuk et al. | ............... 160/92 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| AU | 200048797 A | * | 2/2001 |
| GB | 1537347 | * | 12/1978 |
| JP | 04336191 A | * | 11/1992 |
| JP | 08028144 A | * | 1/1996 |
| JP | 08199927 A | * | 8/1996 |
| JP | 2000-129741 A | * | 5/2000 |
| JP | 2000-129742 A | * | 5/2000 |

* cited by examiner

*Primary Examiner*—Chuck Y. Mah
(74) *Attorney, Agent, or Firm*—Morrison & Foerster LLP

(57) **ABSTRACT**

In-floor, adjustable, track assembly for sliding panels with a build-in weep system, including a track, extending upward from a base, for engaging the undercarriage of a vertically-oriented panel, and supporting rectilinear motion therealong, an upright splash guard, parallel to and spaced slightly apart from one side of the upright track and forming, with the track, a channel therebetween with the base, for directing moisture from the bottom of the panel into the channel, at least one collection pan mounted under the channel and accessible through an aperture to collect moisture from the channel, and a hose for drawing off the moisture from the channel.

**14 Claims, 5 Drawing Sheets**





Figure 1



**Figure 2**



**Figure 2a**



**Figure 2b**



Figure 3



Figure 4

Figure 5

Figure 6



Figure  7



Figure  8

US 6,792,651 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**IN-FLOOR, ADJUSTABLE, MULTIPLE-CONFIGURATION TRACK ASSEMBLY FOR SLIDING PANELS WITH BUILT-IN WEEP SYSTEM**

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to the field of sliding door assembly and installation. More particularly, the invention pertains to a novel floor support system for sliding glass or non-glass panels, that act as doors or room dividers, and to a system for supporting them on a floor-level track including means for draining off water that accumulates on the floor or on either side of the door.

2. Description of the Prior Art

Traditional devices undergo change as our culture matures. The common door, mounted on hinges along one vertical side and arranged to swing through an arc, has given way in part to panels that slide on tracks and disappear into walls, sandwich with other such panels, spread apart to divide a room, or give access from one room to another. In many cases, a plurality of glass panels slides on a single track or on separate, but closely parallel, tracks to form a temporary wall, to divide a room into smaller rooms, or to provide an opening from one room onto a balcony, onto a patio, onto a swimming pool area and the like.

A significant problem with these types of sliding panels occurs where one side of the panels faces outside the home or building toward the elements. Rain, sleet or snow hitting the glass and panel is drawn downward by gravity so that it puddles at the bottom of the panel and, when in great enough quantities, spills over onto the tracks upon which the panels are mounted for sliding movement. In other situations, the floor on one side of the track is slanted such that rain or melted snow runs toward the track. Once the moisture reaches the tracks, problems develop because of the many directions the moisture may flow. For instance, it sometimes flows under the panel and into a room wetting carpets and rugs that thereafter become stained, crispy, or develop an organic growth that causes bad odors and attracts insects. The moisture sometimes flows outward from the panel and stains concrete or causes deterioration of cement and wood flooring, or corrodes the glue that holds down floor coverings such as linoleum, parquet, and vinyl squares.

Often the moisture draws dirt, dust, small insects and bits of leaves and flowers toward the track system. Accumulation of this debris causes the wheels mounted on the panels to become harder to rotate and, in severe cases, seize and refuse to turn, making the panel difficult to move in its intended path. Cleaning these tracks is often difficult and all the debris is rarely removable due to the closeness of the tracks. Often, the panels must be removed and this can be a difficult task. In winter seasons, the moisture often freezes thereby anchoring the panel to its present position and eliminating the desirability of having slidable panels in the first place.

In severe cases, the moisture puddles in the tracks and the subfloor on which the tracks are mounted is weakened. Concrete will crack under freezing and thawing of water and wood beams and wood floors can become weakened by constant exposure to water. Often, the mere beginning of such damage will cause tilting of the tracks and unbalancing of the load of the panels so that they refuse to slide easily along the tracks. Accordingly, it is desirable to provide a system that will capture the moisture and convey it from the track system before such problems begin to develop.

### SUMMARY OF THE INVENTION

This invention is an in-floor, adjustable, track assembly for sliding panels with a built-in weep system to collect and thereafter remove the moisture from the track area where, when installation is complete, the exposed surface of the track is minimal resulting in a smooth transition from interior to exterior. It is useful on single or multiple track systems in areas that are divided by the panels into an exterior or outside section and an interior or inside section. This system finds use where the tracks are mounted on a base, are single tracks or are in closely spaced-apart, parallel arrangement and extend upward from the base for engaging the undercarriage of at least two vertically-oriented panels in close arrangement.

The invention provides for splash guards arranged parallel to and spaced slightly apart from one side of each track, preferably the interior area, and forming, with each track, a channel with the base, for collecting moisture from the floor. At least one collection pan is mounted under each channel, to collect moisture from the channel, and includes a tube or other means to draw off the moisture from the collection pan to a distant location.

Much of the invention is formed of extruded metal, such as aluminum, so that the cost of construction is minimized. Further, the invention is fully adjustable in vertical, as well as horizontal, directions so that it can be placed in new construction and installed in existing construction as well. Other parts are made of plastic and rubber so that the entire system is generally free from problems of corrosion even in the face of constant exposure to moisture.

Accordingly, the main object of this invention is an in-floor, adjustable, track assembly for sliding panels with a built-in weep system that will remove moisture that flows across the floor, and possibly across the track, or that trickles down the sliding panels to puddle at the bottom thereof. Another object of the invention is a fully adjustable track assembly that may be adjusted to compensate for warpage, weakness, and misalignment of walls with floors to allow the panels to slide effortlessly over the track.

These and other objects of the invention will become more apparent when reading the subsequent Description of the Preferred Embodiment taken together with the drawings appended hereto. The scope of protection desired by the inventor may be gleaned from a fair reading of the claims that conclude this Specification.

### DESCRIPTION OF THE DRAWINGS

FIG. 1 is an illustrative view of a single track and weep system according to this invention;

FIG. 2 is a sectional view taken through the single track and weep system shown in FIG. 1 depicting the narrow moisture collection channel of this invention;

FIGS. 2a and 2b are small sectional views of two materials useful in the narrow moisture collection channel;

FIG. 3 is an illustrative view of a multiple track and weep system according to this invention;

FIG. 4 is a cross-sectional view of the rail of this invention showing the moisture collection pan mounted underneath;

FIG. 5 is an illustrative view of the moisture collection pan of this invention;

FIG. 6 is a sectional view of the track and rail of this invention taken orthogonally to the view of FIG. 2;

FIG. 7 is an illustrative view of the side mounting tab formed on the rails of this invention; and,

US 6,792,651 B2

3

FIG. 8 is a perspective view of a moisture trap used in this invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Turning now to the drawings, wherein elements are identified by numbers and like elements are identified by like numbers throughout the ten figures, FIG. 1 shows the in-floor, adjustable, single configuration track assembly 1 for a sliding panel with a built-in weep system of this invention to comprise a narrow, elongated track 3 extending upward from a base 5, slightly above the top surface 7 of finished floor 9 for engaging the undercarriage wheels 13 of a panel 15 (wheels 13 and panel 15 are shown in phantom outline) and supporting panel 15 while it is in motion, such as in rectilinear motion, on track 3. As shown in FIGS. 1 and 2, it is preferred that track 3 is an upright, elongated, narrow-gauge metal plate forming an inverted "T" shape with base 5. Track 3 includes a shaped top surface with small, lateral undercuts 17 for smooth engagement with wheels 13, that extend downward from the bottom of panel 15. Panel 15 has a stout perimeter 19 of metal or wood construction, panel inserts of glass or wood, and generally is quite heavy. It is preferred that track 3 be extruded, such as from aluminum or other extrudable metal, in a single piece with base 5. Such extrusion further includes flanges 21, extending outward from both sides of base 5.

FIG. 3 shows an in-floor, adjustable, multiple configuration track assembly for a plurality of sliding panels 15 (not shown), each with a built-in weep system of this invention, and shows a plurality of narrow, elongated tracks 3 in closely spaced-apart, parallel arrangement, each track 3 extending upward from a separate base 5, for engaging and supporting the undercarriage of at least one panel on each track 3 while said panels are in motion, such as rectilinear motion, thereon. It is important to this invention that track 3 top surface 17 protrudes or extends slightly above finished floor top surface 7 (see FIG. 2) to form a slight barrier to transverse flow of water or moisture across track 3 from the exterior area to the interior area.

As shown in FIGS. 1–4, an upright splash guard 25 is provided for each of narrow tracks 3, parallel to and spaced slightly apart therefrom a distance sufficient to capture moisture either dripping or running off panel 15, shown as drops 27, or running across finished floor top surface 7 and over the top of track 3 from the exterior area toward the interior area. Splash guard 25 forms, with each track 3 and base 5, a narrow channel 29 for collecting moisture from the bottom of each panel 15. When used herein, the term "moisture" means rain, sleet, snow, and water splashed from swimming pools, hoses and the like. Moisture is shown as angled straight lines in the exterior area in FIG. 2. As shown in FIG. 2, track 3 and splash guard 25 are both upright, elongated, narrow-gauge metal plates and, together, form an inverted "T" shape with base 5. In addition, it is preferred that splash guard 25 terminates or "tops" at finished floor top surface 7 so that the entire assembly is at or below top surface 7, except for a slight upward protrusion of track top surface 17 and thus forms a very smooth, uninterrupted top floor surface. This configuration conforms to the requirements of the Americans with Disabilities Act (42 U.S.C §12100 et sec.). Since splash guard 25 and track 3 together form a substantially inverted "T" with base 5, it is preferred that they all be extruded together in one monolithic piece from metal such as aluminum. If not possible, it is preferred that track 3 and base 5 be extruded as one piece and splash guard 21 installed, as shown, and soldered or otherwise rigidly mounted in base 5.

4

A filter means 31 is located in said channel 29 for preventing the ingress of debris. As shown in FIG. 2a, filter means 31 may take the form of a strip of highly reticulated plastic foam 33 cut and inserted into channel 29. As shown in FIG. 2b, a piece of screen 37 may be cut and folded in a shape and slipped into channel 29. Not only do these means prevent the ingress of debris while also not interfering with the collection of moisture, they also are easily removed so that they can be renewed without significant cost or effort.

As shown in FIGS. 4 and 5, at least one collection pan 39 is mounted under each channel 29 and is accessible through at least one aperture 41 formed in the bottom of channel 29, preferably at the bottom of channel 29 in base 5. Collection pan 39 collects moisture that runs down into channel 29. Collection pan 39 is preferably made from plastic, such as polyvinyl chloride, polyvinylidine chloride, polyethylene, and the like, and can be easily injection molded to reduce the cost of production. As shown in FIGS. 4 and 5, collection pan 39 comprises enclosed sidewalls 43, a closed bottom 45, and an open top cavity 49 formed therein. Sidewalls 43 are attached through gaskets 51, along their top surfaces, to the bottom surface 53 of base 5 and cavity 49 is preferably arranged directly below aperture 41 to receive moisture as it drops from the panels into channel 29 and through filter means 31. An opening 55, preferably located in or near collection pan bottom 45 is provided and egress means 57, such as a hose or tube 61, is attached thereto to draw off the moisture from the bottom of said panels.

As shown in the Figures, at least two track support rails 63 are provided, in spaced-apart arrangement, running transversely underneath tracks 3, splash guards 25, and bases 5. As further shown in FIG. 6, rails 63 extend outward, in orthogonal arrangement from track bases 5 and each rail 63 includes a rail body 65, defined by a bottom surface 67 and a top surface 69. A pair of alignment clamps 73a and 73b are provided for each track, for assembly with rails 63 to fasten each track to each rail. As shown in FIG. 1, the alignment between tracks 3 and rails 63 is orthogonal, i.e., each track is adjusted to be as close as possible to perpendicular from each rail. Each clamp 73a and 73b includes a bottom clamp surface 75, a portion 77 of which is shaped for overlapping contact with a curb 79a and 79b formed on track flanges 21 on both sides of track 3.

As shown in FIG. 6, a C-shaped groove 81 is formed in track support rail body 63 opening upward through a slot 83 formed in rail body top surface 69. An aperture 87 is formed in alignment clamps 73a and 73b for arrangement over upwardly opening C-shaped groove 81. As shown in FIGS. 3 and 6, clamps 73a and 73b are assembled with track 3 and track support rail 63 such that track 3 is overlaid rail 63 and clamps 73a and 73b placed on rail 63, one on each side thereof, with portion 77 of clamp bottom surface 75 overlaying flange 21 with slot 85 aligned with aperture 87.

A threaded means 89, such as a flat headed bolt or machine screw 91, is inserted down through aperture 87, through slot 85, and into a bolt-capturing nut 93 located in C-shaped groove 81. Nut 93 is wider than slot 85 but smaller than the maximum internal width of C-shaped groove 81 so that it is captured in groove 81 yet is slightly moveable therein. It is preferred that the outside diameter of bolt 91 be made slightly less than the width of slot 85 to allow for some movement between bolt 91, track 3 and rail 63. This slight looseness allows track 3 and rail 63 to be adjusted horizontally in the floor on which track 3 will be mounted and further allows track 3 and rail 63 to be brought as close as possible to orthogonal arrangement during assembly. It is preferred that bolt 91 have a flat heat with conical sides, as

EXHIBIT B, PAGE 8

5

shown in FIG. 6, and aperture 87 in clamps 73a and 73b have a top chamfer to accept the flat bolt head so that the flat head of bolt 91 will lie flush with the top surface of alignment clamps 73a and 73b.

To aid the location of alignment clamps 73a and 73b on top surface 69 of track support rail 63, as shown in FIG. 6, it is preferred that a pair of upsets or curbs, 97a and 97b, be formed in spaced-apart arrangement on track support rail top surface 69 that, together, form a wide, substantially "U"-shaped depression 99 in rail top surface 69. Alignment clamps 97a and 97b are preferably made just wide enough to fit into said depression 99 and aligned therein for assembly with track 3 and rail 63 to prevent the clamps from moving about when the assembly is subjected to the movement of panels 15 on tracks 3.

As shown in FIGS. 3 and 7, a side mounting tab 101 is formed as an extension on the ends of track support rails 63. An adjustment/mounting slot 103 is formed in rail body 65, preferably at the center of C-shaped groove 81, and through the bottom of rail body 65. As shown in FIG. 6, an elongated, slightly V-shaped indentation 105 is formed in the upper surface of the bottom surface of groove 81 and, preferably, along the center-line of rail bottom surface 67 for aiding in aligning a drill bit to drill through the bottom of rail body 65 in order to center the drill bit used in forming adjustment mounting slot 103.

As shown in FIG. 2, in assembling tracks 3 and rails 63 on the surface wherein the panels are to slide, a first pair of threaded studs 109 is mounted in the cement sub-floor 111 or in the wood sub-floor or other support surface, in spaced-apart arrangement, a distance equal to the distance between adjusting/mounting slots 103 that are formed at each end of rail 63, and along an axis orthogonal to the axis of intended travel of the panels. Rail 63 is then set down on studs 109 and is shimmed to level. A first pair of bolt-capturing nuts 113 is then placed in threaded engagement on studs 109 and tightened down against that portion of rail body 65 at the bottom of C-shaped groove 81 and fastened into place to provide rigid support for the entire assembly. Tracks 3 are then placed on top of rails 63 and alignment clamps 73a and 73b are placed on rail top surface 69, one on each side of track 3 and partially overlapping onto track flanges 21. Flat-headed bolts or machine screws 91 are then inserted into clamp aperture 87 and passed down into threaded receipt in bolt-capturing nuts 93 that are first slipped inside C-shaped groove 81, in rail body 65. Nuts 93 are then tightened down to rigidify the assembly. It is preferred that tracks 3 be orthogonal or perpendicular to rails 63 when the full assembly is rigidified. As shown in FIGS. 3 and 4, collection pans 39, already mounted under rails 63 are connected to hoses 61 to be passed through holes in the sub-floor, preferably to an outside vent for removing the collected moisture from tracks 3.

As shown in FIGS. 3 and 8, a trap 115 may be located transversely between at least two adjacent tracks 3 that are in closely spaced-apart, passing arrangement, in order to collect the moisture that impacts the ends of panels 15 and runs down toward the underlying tracks 3. Panel perimeters 19 often are wide in order to support heavy panel inserts, such as glass panes and wood sheeting. This transverse thickness of the perimeter presents a rather broad surface for moisture to impact and trickle downward. Trap 115 is shown in FIG. 8 to comprise a pair of closely spaced-apart, parallel walls 117 and 119 and a closed base 123 forms an open top U-shaped duct 125 therebetween. A pair of outwardly directed positioning slots 127a and 127b are formed in base 123 for sliding over inwardly-facing flanges 21 on the two

6

adjacent track bases 5. Mounted along the top of wall 117 is a pliable seal 129 for the purpose of contacting panel undercarriage 13 to seal trap 115 against leakage of moisture entering duct 125. Filter means 31, as previously disclosed, may also be inserted in duct 125 to prevent the ingress of debris along with the entrance of moisture. At least one collection pan 39 is mounted under each transverse trap 115 and is accessible through an aperture 87, located at the bottom of duct 125 to pass moisture from duct 129 to an egress means 57, such as hose 61, as previously disclosed.

As shown in FIG. 2, sub-floor 111 is thereafter encased, about its sides and underneath, with additional sub-floor 131, in preparation of the laying of final or finished floor 9 that closes off a view of the invention except for a small upper portion of tracks 3 and the very top of splash guard 25.

In some instances, splash guard 25 and narrow channel 29 may be located on the exterior area of the assembly, however, it is preferred that they be located on the interior area of the assembly.

While the invention has been described with reference to a particular embodiment thereof, those skilled in the art will be able to make various modifications to the described embodiment of the invention without departing from the true spirit and scope thereof. It is intended that all combinations of elements and steps which perform substantially the same function in substantially the way to achieve substantially the same result are within the scope of this invention.

What is claimed is:

1. An in-floor, adjustable, track assembly with built-in weep system for sliding panels, comprising:

   a) a base having a track extending upward therefrom, slightly above a finished floor level, and arranged to engage undercarriage wheels of at least one vertically-oriented panel and support motion of said panel therealong to divide an area about said track into an exterior section and an interior section;

   b) an upright splash guard, located parallel to and spaced slightly apart from said track, in said interior section of said area, and topping at the level of the finished floor, said splash guard forming an open-top channel with said track and said base, for collecting moisture therein;

   c) at least one collection pan mounted under each said channel, in communication with said channel, to collect moisture from said channel;

   d) egress means for drawing off the moisture from said collection pan;

   e) a pair of alignment clamps, each said clamp including a surface for overlapping contact with at least a portion of said base, for arrangement on opposite sides of said track base;

   f) means for attaching said clamps to said base and to a track support rail located underneath said base so as to secure said base to said track support rail; and

   g) means for securing said track support rail with respect to said floor.

2. The in-floor, adjustable, track assembly with built-in weep system for sliding panels, of claim 1, wherein said means for attaching said alignment clamps further including:

   a) a groove formed in said track support rail opening upward toward a bottom surface of a respective one of said pair of alignment clamps;

   b) apertures formed in said alignment clamps and configured to be positioned above said groove formed in said track support rail; and,

   c) affixing means for passing through said apertures and into said groove so as to secure said alignment clamps to said track support rail.

US 6,792,651 B2

7

**3**. The In-floor, adjustable, track assembly with built-in weep system for sliding panels, of claim **2**, wherein said affixing means includes:

a) a threaded bolt configured to pass through said aperture in said alignment clamp and into said groove;

b) a bolt-capturing nut positioned in said groove and configured for threaded receipt of said bolt;

c) wherein said groove includes a first portion that opens upward toward a top surface of said track support rail and is slightly wider than a diameter of said bolt but narrower than a diameter of said nut; and,

d) wherein said groove includes a second portion located below said first portion having an area that is slightly wider than said bolt-capturing nut, to allow said bolt and said nut to be adjusted in position.

**4**. The in-floor, adjustable, track assembly with built-in weep system for sliding panels of claim **1**, further including deformable seals formed along top edges of said track and said splash guard to prevent leakage of moisture during collecting moisture from said panels.

**5**. The in-floor, adjustable, track assembly with built-in weep system for sliding panels of claim **1** further including filter means in said channel for preventing the ingress of debris into said channel and said collection pan.

**6**. A built-in weep system for slidable panels, comprising:

a) at least two bases, each having a track extending upward therefrom, said tracks arranged in closely spaced-apart, parallel manner, for engaging undercarriages of at least two, vertically-oriented panels, one said panel supported on each said track for motion therealong, each of said tracks dividing an area thereabout into an exterior section and an interior section;

b) at least two upright splash guards, each parallel to a respective one of said tracks, extending upward from each base, and each spaced slightly apart from a respective one of said tracks, topping at the level of a finished floor, each said splash guard forming an open-top channel with a respective one of said tracks and said bases for collecting moisture therein;

8

c) at least one collection pan mounted under each said channel to collect moisture from said channels; and,

d) egress means for drawing off the moisture from each of said collection pans.

**7**. The built-in weep system for slidable panels of claim **6** wherein said tracks are upright, elongated, narrow gauge plates that form inverted "T" shapes with said respective bases.

**8**. The built-in weep system for slidable panels of claim **6** wherein said tracks each include a shaped top surface for engagement with wheels included in the undercarriage of a respective one of said vertically-oriented panels.

**9**. The built-in weep system for slidable panels of claim **6** wherein each of said tracks are extruded as a single piece with a respective one of said bases.

**10**. The built-in, weep system for slidable panels of claim **6** wherein said tracks and said upright splash guards are upright, elongated, narrow gauge plates and, together, form an inverted "T" shape with respective ones of said bases.

**11**. The built-in weep system for slidable panels of claim **6** wherein each of said splash guards terminate approximately at the level of the finished floor and each of said upright tracks extend slightly above said finished floor and, wherein each said splash guard together with a respective track and base, form respective ones of said channels therebetween.

**12**. The built-in weep system for slidable panels of claim **6** further including filter means in said channels for preventing the ingress of debris into said channels and said collection pans.

**13**. The built-in weep system for slidable panels of claim **6** wherein said bases each include flanges extending outward on both sides thereof.

**14**. The built-in weep system for slidable panels of claim **6** wherein said egress means for drawing off the moisture from said collection pans include an aperture formed in each said collection pan and a flexible tube connected to each said aperture for conveying the moisture away from said pans.

*   *   *   *   *

# LIFT & SLIDE
# ALL ALUMINUM



**FL.  APPROVAL NO. 260.1**
**DADE CO. NO. 08.0111.01**
**DESIGN PRESSURE = 100 psf**





P A N D A™
WINDOWS & DOORS
3415 BELLINGHAM RD. LAS VEGAS, NV. 89032            PHONE:(702) 643-5700
PANDA@PANDA-WINDOWS.COM       WWW.PANDA-WINDOWS.COM       FAX: (702) 643-5715

EXHIBIT      PAGE



NFRC
National Fenestration
Rating Council
CERTIFIED

# LIFT & SLIDE
# ALL ALUMINUM

## CONTENTS

1.  **TECHNICAL DESCRIPTION**
2.  **TYPOLOGY**
3.  **VERTICAL SECTION**
4.  **HORIZONTAL SECTION**
5.  **STANDARD TRACK**
6.  **DRAINAGE TRACK**
7.  **$1\frac{1}{4}$ INCH TRACK**
8.  **SURFACE MOUNT TRACK**
9.  **HEADER TRACK**
10. **SIDE FRAME**
11. **PANEL INTERLOCK**
12. **CENTER MEETING STILE**
13. **POCKET INTERLOCK**
14. **CORNER POST**



**P A N D A**™
**WINDOWS & DOORS**

3415 BELLINGTON RD N.LAS VEGAS, NV 89030     PHONE:(702) 643-5700
PANDA@PANDA-WINDOWS.COM     WWW.PANDA-WINDOWS.COM     FAX: (702) 643-5715

DRAWINGS AND LAYOUT BY
STAVEN M. PRICE
MMVIII

# TECHNICAL DESCRIPTION

The Panda all aluminum lift and slide door system is completely custom made to order in the USA with a large variety of options available. The system is hurricane rated with a structural wind load of 150 psf and a 100 DP rating. It has been specifically engineered for maximum weather tightness, security and performance.

**Profiles:**
Profiles are manufactured from 6063-T5 extruded aluminum with wall thickness of up to 1/8″ allowing for oversized panels. Each panel can be in excess of 70 square feet in size3 over 14' in height. The door systems are available wirh either powder coat, Kynar or anodized finishes in virtually any color the customer chooses.

**Tracking:**
There are 4 types of tracks available to accommodate any flooring conditions, allowing for an almost seamless look with only 3/16″ protrusion above the finished floor. All weight is carried on the bottom track, the top track serves as a guide.

**Configurations:**
By custom building each door system in house with multiple panels, tracks, angled panel connectors and radius curves (12' min), almost any size and shape of opening can be accommodated.

**Hardware:**
The wheel carriages are comprised of synthetic nylon wheels with encased stainless steel ball bearings and have a corrosion resistant treatment applied for high performance in coastal regions. Each wheeel carriage can support up to 550 lbs which allows an 1,100 lb panel to be supported by only one set of two carriages. The operating mechanism includes a multi-point lock and can accept any 10mm Lift & Slide handle. The entire door system has specially designed EPDM gaskets to create a totally closed, weather tight system.

**Glazing:**
The Panda aluminum wood lift and slide system can accept any type glazing available on the market up to 1" thick.

**Weight:**
Each panel weighs approximately 10 to 14 lbs per sq ft depending on overall panel size.

EXHIBIT C, PAGE 3



DESCRIPTION
LIFT & SLIDE A/A    1

# MOST COMMON CONFIGURATIONS

## CONFIGURATIONS WITH POCKETS



(SYSTEM CAN POCKET LEFT OR RIGHT)

**PANORAMIC**
MIN. RADIUS (144")

**CORNER**
45° AND 90° UNITS

**STRAIGHT**

## CONFIGURATIONS WITHOUT POCKETS



(SYSTEM CAN STACK LEFT AND/OR RIGHT)

**PANORAMIC**
MIN. RADIUS (144")

**CORNER**
45° AND 90° UNITS

**STRAIGHT**
HURRICANE RATED
CONFIGURATION AVAILABLE

EXHIBIT C, PAGE 4

**TYPOLOGY**
LIFT & SLIDE A/A | 2



EXHIBIT C, PAGE 5



POCKET/WALL FRAMING

POCKET

CENTER MEETING STILE (12)

INTERIOR

POCKET INTERLOCK (13)

POCKET BOARD

PANEL STILE

EXTERIOR

INTERIOR

PANEL INTERLOCK (11)

EXTERIOR

SIDE FRAME (10)

JAMB CONSTRUCTION

EXHIBIT C, PAGE 6

**HORIZONTAL SECT.**
**LIFT & SLIDE   A/A   4**

**FEATURES:**

- · TRACK RECESSED INTO SUBFLOOR
- · FINISH FLOOR LAID IN BETWEEN TRACKS LEAVING ONLY A 3/16" RAIL EXPOSED
- · A VIRTUALLY UNOBSTRUCTED THRESHOLD FROM THE INTERIOR TO THE EXTERIOR AREA
- · ADA COMPLIANT

TRENCH DEPTH (MIN.)

$(= 2\frac{1}{2}"$-F.F. THICKNESS)

TRENCH WIDTH (RECOMMENDED)

| | |
|---|---|
| 1 TRACK | 6" |
| 2 TRACK | 9" |
| 3 TRACK | 12" |
| 4 TRACK | 15" |



EXHIBIT C, PAGE 7



**STANDARD TRACK**

LIFT & SLIDE   A/A   5

**FEATURES:**

- TRACK RECESSED INTO SUBFLOOR
- FINISH FLOOR LAID IN BETWEEN TRACKS LEAVING ONLY A 3/16" RAIL EXPOSED
- A VIRTUALLY UNOBSTRUCTED THRESHOLD FROM THE INTERIOR TO THE EXTERIOR AREA
- WEEP CHANNEL FOR INCREASED SECURITY AGAINST WATER INFILTRATION
- ADA COMPLIANT

TRENCH DEPTH (MIN.)
(= 2½"-F.F. THICKNESS)
TRENCH WIDTH (RECOMMENDED)

| | |
|---|---|
| 1 TRACK | 6" |
| 2 TRACK | 9" |
| 3 TRACK | 12" |
| 4 TRACK | 15" |



EXHIBIT C, PAGE 8


DRAINAGE TRACK
LIFT & SLIDE    A/A    6

**FEATURES:**
- SHALLOWER RECESS INTO THE FLOORING
- TRACK LEVELED WITH STACK SHIMS INSTEAD OF ALL-THREADS
- TRACK RECESSED INTO SUBFLOOR
- FINISH FLOOR LAID IN BETWEEN TRACKS LEAVING ONLY A 3/16" RAIL EXPOSED
- A VIRTUALLY UNOBSTRUCTED THRESHOLD FROM THE INTERIOR TO THE EXTERIOR AREA
- ADA COMPLIANT

TRENCH DEPTH (MIN.)

(= $1\frac{1}{4}$ "-F.F. THICKNESS)

FOR MIN. DEPTH INSTALLATION
SUB-FLOOR MUST BE SMOOTH & LEVEL

TRENCH WIDTH (RECOMMENDED)

| | |
|---|---|
| 1 TRACK | 3" |
| 2 TRACK | 6" |
| 3 TRACK | 9" |
| 4 TRACK | 12" |



EXHIBIT C, PAGE 9

**1 1/4 IN TRACK**
LIFT & SLIDE   A/A   7

**FEATURES:**
- **LOW 3/16" TRACK MOUNTING DIRECTLY TO THE FINISHED FLOOR.**
- **USED ONLY IN SITUATIONS WHERE RECESSING IS NOT POSSIBLE**
- **ADA COMPLIANT**



**FOR  BEST OPERATION -FLOOR MUST BE SMOOTH & LEVEL**

EXHIBIT C, PAGE 10

**SURFACE TRACK**

**LIFT & SLIDE    A/A    8**

SHIM SPACE

FROM $\frac{1}{2}$" TO 1" DEPENDING ON TYPE OF
BOTTOM TRACK & FINISHED FLOOR THICKNESS

HEADER TRACK WIDTHS (APPROX)

| | |
|---|---|
| 1 PANEL | 4" |
| 2 PANEL | 7" |
| 3 PANEL | 10" |
| 4 PANEL | 13" |

(TRENCH WIDTH SHOULD BE TAKEN INTO
ACCOUNT WHEN PLANNING ROUGH
HEADER CONSTRUCTION)

HEADER
CONSTRUCTION

ADJUSTABLE SHIMS

HEADER TRACK

EPDM TOP CLIP

UPPER PANEL RAIL

GLAZING CLIP

EPDM GLAZING GASKETS

GLASS

EXTERIOR

INTERIOR

1"

2"

$\frac{1}{4}$" (WITH PANEL IN DOWN POSITION)

4"

$2\frac{3}{4}$"

STANDARD GLASS $\frac{1}{4}$ X $\frac{1}{2}$ X $\frac{1}{4}$
CLEAR LOW-E INSULATED
GLASS SIZES
MIN. $\frac{1}{2}$" - MAX. 1 1/4"
IMPACT RATED
WET GLAZED
$\frac{1}{4}$ X .09 X $\frac{1}{4}$ LAMINATED &
HEAT STRENGTHENED

EXHIBIT C, PAGE 11

HEADER TRACK

LIFT & SLIDE   A/A   9

**SHIM SPACE**
$\frac{1}{2}$" IS TYPICAL

**SIDE FRAME WIDTHS (APPROX)**

| | |
|---|---|
| 1 PANEL | 4" |
| 2 PANEL | 7" |
| 3 PANEL | 10" |
| 4 PANEL | 13" |

(TRENCH WIDTH SHOULD BE TAKEN INTO ACCOUNT WHEN PLANNING SIDE JAMB CONSTRUCTION)



SHIM SPACE

SIDE JAMB CONSTRUCTION

SIDE FRAME

EPMD "V" GASKETS

LOCKING ASSEMBLY

EPDM GLAZING GASKETS

GLASS

PANEL STILE

GLAZING CLIP

EXTERIOR

INTERIOR

2"

4"

2$\frac{3}{4}$"

STANDARD GLASS $\frac{1}{4}$ X $\frac{1}{2}$ X $\frac{1}{4}$
CLEAR LOW-E INSULATED
GLASS SIZES
MIN. $\frac{1}{2}$" - MAX. 1$\frac{1}{4}$"
IMPACT RATED
WET GLAZED
$\frac{1}{4}$ X .09 X $\frac{1}{4}$ LAMINATED &
HEAT STRENGTHENED

EXHIBIT C, PAGE 12

**SIDE FRAME**

| LIFT & SLIDE | A/A | 10 |



FELT BRUSHES

EPDM INTERLOCK GASKET

6"

INTERLOCK

GLAZING CLIP

4"

PANEL STILE

$2\frac{3}{4}$"

STANDARD GLASS $\frac{1}{4}$ X $\frac{1}{2}$ X $\frac{1}{4}$
CLEAR LOW-E  INSULATED
GLASS SIZES
MIN. $\frac{1}{2}$" - MAX. 1 1/4"
IMPACT RATED
WET GLAZED
$\frac{1}{4}$ X .09 X $\frac{1}{4}$ LAMINATED &
HEAT STRENGTHENED

EPMD GLAZING GASKETS

GLASS

EXHIBIT C, PAGE 13



PANEL INTERLOCK

LIFT & SLIDE    A/A    11



GLAZING CLIP

LOCKING
HARDWARE

FELT BRUSHES

HANDLES

ASTRIGAL

EPDM "V"
GASKETS

PANEL STILE

EPMD GLAZING
GASKETS

GLASS

STANDARD GLASS $\frac{1}{4}$ X $\frac{1}{2}$ X $\frac{1}{4}$
CLEAR LOW-E INSULATED
GLASS SIZES
MIN. $\frac{1}{2}$" - MAX. 1 1/4"
IMPACT RATED
WET GLAZED
$\frac{1}{4}$ X .09 X $\frac{1}{4}$ LAMINATED &
HEAT STRENGTHENED

EXHIBIT C, PAGE 14



CENTER STILE
LIFT & SLIDE   A/A   12



EXHIBIT C, PAGE 15



90° POST

EPDM GLAZING GASKET

GLAZING CLIP

90°

EPDM "V" GASKET

45° POST

STANDARD GLASS ½ X ½ X ¼ CLEAR LOW-E  INSULATED
GLASS SIZES
MIN. ½" - MAX. 1¼"
IMPACT RATED
WET GLAZED
½ X .09 X ¼ LAMINATED & HEAT STRENGTHENED

GLASS

45°

EXHIBIT C, PAGE 16

**CORNER POSTS**
LIFT & SLIDE   A/A   14

🖎 AO 120 (Rev. 3/04)

| TO: | Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court ___Southern District of California___ on the following  ☒ Patents or  ☐ Trademarks:

| DOCKET NO. | DATE FILED<br>March 30, 2010 | U.S. DISTRICT COURT<br>Southern District |
|---|---|---|
| PLAINTIFF<br>WEILAND SLIDING DOORS AND WINDOWS, INC., a<br>California corporation | | DEFENDANT<br>PANDA WINDOWS AND DOORS, LLC, a limited liability<br>company of Nevada |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1  US 7,007,343 | March 7, 2006 | Weiland Sliding Doors and Windows, Inc. |
| 2  US 6,792,651 | September 21, 2004 | Weiland Sliding Doors and Windows, Inc. |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
|---|---|---|
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

American LegalNet, Inc.
www.USCourtForms.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
WEILAND SLIDING DOORS AND WINDOWS, INC., a California corporation

## DEFENDANTS
PANDA WINDOWS AND DOORS, LLC, a limited liability company of Nevada

FILED
2010 MAR 30 PM 3: 48

**(b)** County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Las Vegas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Neil F. Martin, John L. Haller and Susan B. Meyer
GORDON & REES LLP
101 West Broadway, Suite 1600
San Diego, CA 92101
(619) 696-6700

Attorneys (If Known)

'10 CV 0677   JLS AJB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

**PERSONAL INJURY**
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury— Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
**Habeas Corpus:**
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [x] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 USC Sections 271, 283, 284, 285 and 289

Brief description of cause:
Infringement of U.S. Patent Nos. 7,007,343 and 6,792,651

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $1.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____   DOCKET NUMBER _____

DATE
March 30, 2010

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 11109   AMOUNT $350   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

ORIGINAL   MB 03-30-10

American LegalNet, Inc.
www.FormsWorkflow.com

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS011689
Cashier ID: mbain
Transaction Date: 03/30/2010
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
---------------------------------
CIVIL FILING FEE
 For: WEILAND SLIDING DOORS V PANDA
 Case/Party: D-CAS-3-10-CV-000677-001
 Amount:        $350.00
---------------------------------
CHECK
 Check/Money Order Num: 88001
 Amt Tendered:  $350.00
---------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```