# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEILAND SLIDING DOORS AND WINDOWS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PANDA WINDOWS AND DOORS, LLC, <br><br> Defendant. | **CASE NO. 10CV677 JLS (AJB)** <br><br> **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS PURSUANT TO C.C.P. § 425.16; OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS; (2) DISMISSING DEFENDANT'S EX PARTE MOTION TO SUPPLEMENT; AND (3) DISMISSING MOTION TO APPEAR TELEPHONICALLY** <br><br> (Doc. Nos. 23, 39, & 43.) |

Presently before the court is Plaintiff and Counter-Defendant Weiland Sliding Doors and Windows, Inc.'s (Plaintiff or Weiland) motion to dismiss pursuant to California Code of Civil Procedure § 425.16, or in the alternative, motion for judgment on the pleadings. (Doc. No. 23 (Mot.).) Also before the Court is Defendant and Counter-Plaintiff Panda Windows and Doors, LLC's (Defendant or Panda) opposition (Doc. No. ## (Opp'n)) and Plaintiff's reply. (Doc. No. 38 (Reply).)

## BACKGROUND

Plaintiff initiated the underlying patent infringement suit on March 30, 2010, (Doc. No. 1) and filed a first amended complaint (FAC) on April 9, 2010. (Doc. No. 6 (FAC).) The suit concerns two patents, 7,007,343 ('343 patent) and 6,792,651 ('651 patent). Defendant answered and counterclaimed for intentional interference with business relationships (IIBR). (Doc. No. 7 (Answer)

1  at 9.)

2  Defendant's counterclaim centers around a message (the Press Release) Plaintiff sent to "purchasers and potential purchasers" of Defendant's products. (Mot. at 5.) Spanning two pages, the Press Release was allegedly sent to "six thousand recipients" and posted on the internet. (Opp'n at 1.) The Press Release first noted that Plaintiff was suing Defendant for violating the '343 and '651 patents. (Answer, Exhibit C.) Plaintiff then expounded on the innovations that it had bestowed on the door and window industry. (*Id.*) And finally, Plaintiff propositioned "contractors and dealors who wish to avoid liability for themselves and their customers for selling an infringing product [to] contact [Plaintiff] directly to discuss the possible licensing of non-Weiland patented drainage track." (*Id.*)

10  On May 4, 2010, Plaintiff answered Defendant's counterclaims. (Doc. No. 11.) And five months later, Plaintiff filed the present motion to dismiss the counterclaim, or in the alternative, motion for judgment on the pleadings.

13  **ANALYSIS**

14  Plaintiff asserts two bases for defeating Defendant's counterclaim. The first is set forth as a motion to dismiss and relies on California Code of Civil Procedure § 425.16, commonly known as the anti-SLAPP statute. Plaintiff argues that the counterclaim "was brought solely to punish [Plaintiff] for exercising its free speech and petition rights." (Mot. at 1.) As a result, the counterclaim is contrary to the anti-SLAPP statute and should be dismissed.

19  Alternatively, Plaintiff motions for judgment on the pleadings under three theories. Plaintiff first argues that the Press Release is protected by the litigation privilege because it "was made with some relation to judicial proceedings." (*Id.* at 6.) Then Plaintiff argues that the Press Release is the result of proper exercise of a patentee's ownership rights. (*Id.* at 7.) And finally, Plaintiff argues that it cannot be liable for IIBR because of the *Noerr-Pennington* doctrine. (*Id.* at 9.)

24  **I.    Motion to Dismiss based on California Code of Civil Procedure § 425.16**

25  Defendant counterclaims for IIBR based on the Press Release sent by Plaintiff. Plaintiff argues that the counterclaim should be dismissed because the counterclaim falls under the purview of California's anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16. If a case is found to be a SLAPP suit—in that it falls under § 425.16—the complaint or counterclaim must be stricken "unless the court

determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). Moreover, the prevailing party in a § 425.16 motion may be entitled to attorney's fees and costs. *Id.* § 425.16(c).

Section 425.16 applies to four types of lawsuits, two of which are relevant. Plaintiff argues that the counterclaim is a SLAPP suit because it arises from "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," or "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." *Id.* § 425.16(e)(1)–(2).

There are exceptions to § 425.16, however, and the exceptions can be found in California Code of Civil Procedure § 425.17. Importantly, even if an action qualifies as a SLAPP suit under § 425.16, it cannot be dismissed if a § 425.17 exception applies. *Holbrook v. City of Santa Monica*, 144 Cal.App.4th 1242, 1249–50 (Cal. Ct. App. 2006). Defendant argues that the commercial speech exemption found in § 425.17(c) is applicable to its counterclaim. Section 425.17(c) states in relevant part:

> Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling . . . goods or services . . . .arising from any statement or conduct by that person if both of the following conditions exist:
>
> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales . . . of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
>
> (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . .

Cal. Civ. Proc. Code § 425.17(c).

The Court finds that the § 425.17(c) safe harbor provision applies to Defendant's counterclaim. In this case, the statutory language concerning "that person" applies to Plaintiff, "a business competitor" refers to Defendant, and "statement or conduct" refers to the Press Release. Under the first § 425.17(c) element, Plaintiff's Press Release made representations of fact about both Plaintiff and Defendant's business operations, goods, or services. The Press Release charged Defendant with

1  violating several of Plaintiff's patents. (Answer, Exhibit C.) And it also discussed Plaintiff's own
2  "patented drainage track[s]." (*Id.*)

3  The second element, that the Press Release be made for the purpose of promoting or securing
4  sales of the Plaintiff's goods, is also met. The Press Release explicitly requests "[c]ontractors and
5  dealers who wish to avoid liability for themselves and their customers for selling an infringing
6  product" to contact Plaintiff to discuss the possibility of licensing. (*Id.*) And approximately half the
7  text focuses Plaintiff's contribution to the market and the benefits of Plaintiff's products. (*Id.*)

8  Finally, the Press Release was communicated to "several Panda customers," satisfying the third
9  § 425.17(c) requirement. (Answer at 8.) By satisfying all the § 425.17(c) requirements, Defendant's
10 IIBR counterclaim falls under an exception to the anti-SLAPP statute and cannot be stricken pursuant
11 to § 425.16.

12 The remaining question is whether Defendant should be awarded fees and costs. Attorney's
13 fees and costs can be assessed against a § 425.16 movant only if the "special motion to strike is
14 frivolous or is solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 425.16(c). This
15 requires that "any reasonable attorney would agree such motion is totally devoid of merit." *Decker*
16 *v. U.D. Registry, Inc.*, 105 Cal.App.4th 1382, 1392 (Cal. Ct. App. 2003).

17 The Court finds that Plaintiff's § 425.16 motion is not frivolous and is not solely intended to
18 cause unnecessary delay. Plaintiff's anti-SLAPP motion is combined with a motion for judgment on
19 the pleadings. This indicates a good faith effort to dismiss Defendant's counterclaim. Consequently,
20 Defendant is not entitled to fees and costs.

21 For the reasons stated above, the Court **DENIES** Plaintiff's anti-SLAPP motion to dismiss.
22 Defendant is not entitled to attorney's fees or costs.

23 **II.  Motion for Judgment on the Pleadings**

24 Plaintiff motions, in the alternative, for judgment on the pleadings in response to Defendant's
25 counterclaim. The motion is based on three affirmative defenses: litigation privilege, patent-owner
26 rights, and the *Noerr-Pennington* doctrine.

27 Importantly, the Court recognizes that Plaintiff's motion is styled as a motion for judgment on
28 the pleadings. The Court considers the pleadings only and declines to transform the motion into a

motion for summary judgment. Fed. R. Civ. P. 12(c).

*(A)     Legal Standard*

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings attacks the legal sufficiency of the claims alleged in the complaint. This Court must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "For a complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

*(B)     Discussion*

*1.     Litigation Privilege*

Plaintiff's first basis for judgment on the pleadings is based on the litigation privilege. (Mot. to Dismiss at 5.) The litigation privilege applies to any communication (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. *Silberg v. Anderson*, 50 Cal.3d 205 (1990).

The parties in this case dispute the second prong. Plaintiff argues that communications "merely informing a third party of the pendency of the litigation" are within the scope of the litigation privilege. *Cargill Inc. v. Progressive Dairy Solutions, Inc.*, 2008 WL 2235354 (E.D. Cal. May 29, 2008). And because the Press Release "only gave notice of this patent infringement case," it is protected by the litigation privilege. (Mot. to Dismiss at 7.) Defendant argues, however, that "while the litigation privilege can apply to out-of-court statements to third parties, it only does so when the statements are made to persons who have a "substantial interest" in the litigation." (Opp'n at 11 (citing *Sharper Image Corp. v. Target Corp.*, 425 F.Supp.2d 1056, 1077 (N.D. Cal. March 29, 2006).)

1  Based on the pleadings, the Court finds that the litigation privilege applies. Defendant's
2  complaint alleges that the Press Release was sent "directly to several Panda customers." (Answer at
3  8.) Defendant's customers are undoubtedly persons who have "substantial interest" in the litigation.
4  They are potentially subject to infringement liability and would otherwise be affected by ongoing
5  litigation. Thus, the litigation privilege applies on the face of the complaint. The Court, therefore,
6  grants Plaintiff's motion for judgment on the pleadings as to this affirmative defense.

7  *(B)    **Patent-Owner Rights***

8  Plaintiff's second affirmative defense is based on its rights as a patent owner. Plaintiff argues
9  that the Press Release was a proper exercise of its rights as a patent owner, and as a result, Defendant
10 cannot prevail on its counterclaim. (Mot. to Dismiss at 7.) A patentee may, in good faith, advise
11 "possible infringers of its belief that a particular product may infringe the patent." *Mikohn Gaming*
12 *Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998). "Federal law requires a showing
13 of bad faith in order to bar such communications." *Id.* at 898. To show bad faith, a party must show
14 that its assertion of patent rights was incorrect, false, or made with a disregard for either. *Id.* at 897.

15 Defendant alleges in its counterclaim that the Press Release claimed "in bad faith that
16 [Defendant's] products infringe [Plaintiff's] patent rights." (Answer at 9.) Defendant's argument for
17 bad faith is two pronged. First, Defendant argues that the Press Release was "a naked attempt to
18 persuade Panda customers to terminate their relationship with [Defendant] and to instead by (sic)
19 product from Weiland." (Answer at 8.)

20 The second basis for bad faith arises from correspondence between the parties in 2007. In
21 November 2007, Plaintiff wrote a letter requesting Defendant take out licenses for its products under
22 U.S. Patents 6,381,911; 6,792, 651; and 7,007,343; two of which—'651 and '343—are the subject of
23 this lawsuit. (Answer at 7.) Defendant responded on December 13, 2007, stating that none of its
24 products required licensing but requesting Plaintiff respond if it felt otherwise. (*Id.*)

25 The parties agree that Plaintiff never responded to Defendant's letter. (Doc. No. 11 ¶ 8.)
26 Defendant interpreted the lack of response as an "implicit assurance that no Panda
27 product . . . practiced any claim . . . listed in the November 20 letter . . . and that Panda therefore did
28 not require a license" under these patents. (Answer at 8.) And under the circumstances, Defendant

1 argues that Plaintiff cannot be making a good faith argument of infringement in the Press Release. (Opp'n at 16.) Plaintiff alleges that it never received Defendant's December 2007 letter. (Doc. No. 11 (Answer to Counterclaim) ¶ 8.)

The Court denies without prejudice Plaintiff's motion for judgment on the pleadings on this second basis. It is not clear on the face of the pleadings that this affirmative defense applies. *See McCalden*, 955 F.2d at 1219. Defendants allege in its counterclaim that the Press Release was sent in bad faith. This fact, and all inferences reasonably drawn from this fact, eviscerates the necessary element of good faith in Plaintiff's privilege defense.

*(C)     Noerr-Pennington Doctrine*

Plaintiff's final argument for judgment on the pleadings is based on the *Noerr-Pennington* doctrine. The doctrine bars "any claim . . . that has its gravamen constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F.Supp 948 (S.D. Cal. April 24, 1996). In the litigation context, this means that "parties who maintain civil suits are entitled to immunity for doing so under the *Noerr-Pennington* doctrine of immunity so long as the litigation is not a sham." *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F.Supp. 345, 355 (S.D.N.Y 1997) (internal quotations omitted). The Supreme Court established a two-part test to determine sham litigation. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). First, the lawsuit must be such that "no reasonable litigant could reasonably expect success on the merits." *Id.* Only if the litigation is objectively baseless in this way can the Court proceed to the second question. *Id.* And the question then is whether "the lawsuit conceals an attempt to interfere directly with the business relationships of a competitor." *Id.*

In addition to privileging the act of filing suit, courts have extended the doctrine to "conduct ancillary to litigation." *Thomas v. Housing Authority*, 2005 WL 6136440 (C.D. Cal. June 3, 2005). This has included "threats to sue and offers to settle." *Id. See also Sosa v. DirecTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) (holding that pre-suit demand letters were protected by the *Noerr-Pennington* doctrine); *Aircapital Cablevision, Inc. v. Starlink Comm'ns Grp., Inc.*, 634 F.Supp. 316 (D. Kansas May 6, 1986) (privileging litigation publicity aimed at customers).

This type of extension is exemplified in *Matsushita*. *Matsushita Elecs.*, 974 F.Supp. at 345.

1 In *Matsushita*, the plaintiff brought suit for tortious interference with business relations arising from a lawsuit filed by the defendant. *Id.* at 354. The defendant had, in a separate action, sued the plaintiff for patent infringement. The *Matsushita* court found that the lawsuit itself was privileged under the *Noerr-Pennington* doctrine. But as part of the patent suit, the defendant sent out two batches of letters. The first batch was sent to parties involved in the patent suit, and it requested possible licensing arrangements and encouraging settlement discussions. *Id.* at 359. The second batch was sent to companies not named in the patent litigation but who were using items covered by the patents in suit. *Id.* The *Matsushita* plaintiff argued that the defendant was not shielded from liability for sending these letters. *Id.*

The *Matsushita* court disagreed with the plaintiff and found the letters privileged as well. It found that the first batch of letters "represented a reasonable attempt to expedite the resolution of that litigation." *Id.* And the second batch of letters reflected a "reasonable attempt to determine whether it should join those companies as defendants" in the litigation. *Id.* As a result, both batches were "reasonably attendant upon effective litigation." *Id*. And because the underlying patent action was not a sham action, the defendant's letters were privileged under the *Noerr-Pennington* doctrine. *Id.*

In this case, Plaintiff first gives life to the doctrine's applicability by asserting that Defendant's "basis for its counterclaim . . . is [Plaintiff's] institution of the patent infringement suit." (Mot. to Dismiss at 9.) But the counterclaim does not rely on the patent suit. Plaintiff even recognizes this when it states that Defendant "simply alleged [Plaintiff] is liable [for] sending communications that may have interfered with [Defendant's] business relationships." (*Id.*)

The question before the Court, therefore, is whether Plaintiff's act of sending the Press Release is privileged under the *Noerr-Pennington* doctrine. Problematically, Plaintiff's motion is framed as motion for judgment on the pleadings. Given the intense factual findings required to assess the *Noerr-Pennington* doctrine and its exceptions, the Court does not find it appropriate to resolve the privilege at this stage. As a result, Plaintiff's motion for judgment on the pleadings based on the *Noerr-Pennington* doctrine is denied without prejudice.

**III.   Conclusion**

Plaintiff motions for judgment on the pleadings based on litigation privilege, patent-owner

1  privilege, and the *Noerr-Pennington* doctrine. The Court **GRANTS** Plaintiff's motion for judgment
2  on the pleadings based on the litigation privilege and **DENIES WITHOUT PREJUDICE** the motion
3  for judgment on the pleadings based on the patent-owner privilege and the *Noerr-Pennington* doctrine.

**CONCLUSION**

For the reasons stated above, the Court **DENIES** Plaintiff's motion to dismiss pursuant to California Code of Civil Procedure § 425.16. The Court **GRANTS** Plaintiff's motion for judgment on the pleadings based on the litigation privilege and **DENIES WITHOUT PREJUDICE** the motion for judgment on the pleadings based on the patent-owner privilege and the *Noerr-Pennington* doctrine. Defendant's counterclaim for intentional interference with business relationships is **DISMISSED WITH LEAVE TO AMEND**. Moreover, Defendant's motions to supplement and appear telephonically are **DISMISSED** as moot. (Doc. Nos. 39 & 43.)

**IT IS SO ORDERED.**

DATED: October 28, 2010

Honorable Janis L. Sammartino
United States District Judge