# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEILAND SLIDING DOORS AND WINDOWS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PANDA WINDOWS AND DOORS, LLC, <br><br> Defendant. | CASE NO. 10CV677 JLS (MDD) <br><br> **ORDER ON CLAIM CONSTRUCTION** |

On March 30, 2010, Plaintiff Weiland Sliding Doors and Windows, Inc. brought suit against Defendant Panda Windows and Doors, LLC alleging infringement of U.S. Patent No. 6,792,651, and a continuation patent, Patent No. 7,007,343.  Presently before the Court is claim construction.

## BACKGROUND

Patent Nos. 6,792,651 and 7,007,343 are in the field of sliding-door assemblies—specifically the tracks.  Prior-art track systems were inadequate when one side of the panel and track system was exposed to a fluid heavy environment.  Fluid would often flow through the space between the panel and the track into an area where fluid didn't belong.  Fluid accumulating around the track could also freeze and prevent the panels from sliding properly.  And the worst problem occurred when fluid accumulated around the track and weakened the subfloor supporting the track.  This was not only a problem because of damage to the subfloor, but also because the tracks would shift and prevent the panels from sliding properly.

The invention envisioned in the '651 and '343 patents aimed to solve these problems by controlling and preventing fluid accumulation. The core of the invention involves five parts: a base, a track on which panels slide, a splash guard, a collection pan, and a means for drawing off moisture collected in the collection pan. From the base extends the track and upright splash guard; and together, the three form a channel. Below the channel is the collection pan. Any fluid that flows over the track falls into the channel and collects in the collection pan. The fluid is then drawn out of the collection pan via some other means.

## LEGAL STANDARD

The Court construes the scope and meaning of disputed patent claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–90 (1996). Words of a claim are "generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). This is the meaning the term would have to a person of ordinary skill in the art as of the effective filing date of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Because the inquiry into the meaning of claim terms is an objective one, the court looks to publicly available sources to show what a person would have understood the claim language to mean. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Those sources include the claims, the specification, the prosecution history, and relevant extrinsic evidence. *Id.*

Claim construction begins with an analysis of the words of the claims themselves. *See Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 365 F.3d 1299, 1303 (Fed. Cir. 2004). In examining the claims, "the context in which a term is used can be highly instructive." *Phillips*, 415 F.3d at 1314. Moreover, "[o]ther claims of the patent in question, both asserted and unasserted can . . . be valuable sources of enlightenment as to the meaning of a claim term." *Id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Conversely, under the doctrine of claim differentiation, "'different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.'" *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007).

1     "Importantly, the person of ordinary skill in the art is deemed to read the claim term not
2 only in the context of the particular claim in which the disputed term appears, but in the context of
3 the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "Usually, [the
4 specification] is dispositive; it is the single best guide to the meaning of a disputed term."
5 *Vitronics*, 90 F.3d at 1582; accord Phillips, 415 F.3d at 1317. The specification acts as a
6 dictionary when it expressly or implicitly defines terms used in the claims. *Vitronics*, 90 F.3d at
7 1582. In doing so, the patentee may define a claim term in a manner inconsistent with its ordinary
8 meaning. *Metabolite Labs., Inc. v. Lab. Corp. of Am.*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).
9     Patent claims should ordinarily be construed to encompass the preferred embodiments
10 described in the specification, for "[a] claim construction that excludes a preferred embodiment . . .
11 'is rarely, if ever correct.'" *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir.
12 2005). However, a court should not import limitations from the specification into the claims,
13 *Phillips*, 415 F.3d at 1323, absent a specific reference in the claims themselves, *Reinshaw PLC v.
14 Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).
15     The prosecution history may also inform claim construction. *Vitronics*, 90 F.3d at 1582.
16 "Like the specification, the prosecution history provides evidence of how the PTO and the
17 inventor understood the patent." *Phillips*, 415 F.3d at 1317. It can be useful to show "how the
18 inventor understood the invention and whether the inventor limited the invention in the course of
19 prosecution, making the claim scope narrower than it would otherwise be." *Id.*
20     "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity
21 in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence."
22 *Vitronics*, 90 F.3d at 1583. But this is not a rule of admissibility, nor does it "prohibit courts from
23 examining extrinsic evidence, even where the patent document is itself clear." *Pitney Bowes, Inc.
24 v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999). The court is not "barred from
25 considering any particular sources or required to analyze sources in any specific sequence, as long
26 as those sources are not used to contradict claim meaning that is unambiguous in light of the
27 intrinsic evidence." *Phillips*, 415 F.3d at 1324.
28 ///

**DISCUSSION**

The parties approach the Court with twenty-nine issues. That this many issues exist reflects not the complexity of the case but rather the manner in which the parties approached claim construction. Of the twenty-nine issues, only three are truly disputed. And of those three, only two require extensive discussion.

**1.    Limiting Preamble**

*A.    Patent 6,792,651 claims 1 and 6*

The parties disagree whether the preambles for claims 1 and 6 in the '651 patent are limiting. Plaintiff argues that the preambles should not be construed as part of the claim. Defendant disagrees.

The preamble to a claim can be a limitation if it recites essential structure or steps, or if it is necessary to give life, meaning, and validity to a claim. *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1340 (Fed. Cir. 2010.) Conversely, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

The preambles for claims 1 and 6 state a purpose and intended use for the invention, and the claim bodies define structurally complete inventions. The preambles are therefore not claim limitations.

Claim 1's preamble states that it claims "[a]n in-floor, adjustable, track assembly with built-in weep system for sliding panels, comprising . . . ." Patent '651 at 6:28–29. The body of the claim then states what the "track assembly" is comprised of. It comprises, in short, a base having a track extending upward therefrom, an upright splashguard forming an open-top channel with said track and said base, at least one collection pan mounted under each said channel for collecting moisture, an egress means for drawing off the moisture from the collection pan, a pair of alignment clamps, a means for attaching the clamps to the base and to a track support rail, and a means for securing the track support rail to the floor. Patent '651 at 6:28–55.

///

1    The preamble names what is being claimed, a "track assembly," but does little else. And
2 simply naming the structure being claimed in the body is insufficient to render the preamble
3 limiting. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 Fed Cir. 2000). The
4 body of claim 1 defines a structurally complete invention without reference to the preamble.
5 Indeed, deleting the premable would not affect the claimed invention. *See id.*

6    The analysis is equally applicable to claim 6. Claim 6's preamble states that it claims "a
7 built-in weep system for slidable panels, comprising . . . ." Patent '651 at 6:26. The body recites a
8 complete structure independent of the preamble. It claims:

> a) at least two bases, each having a track extending upward therefrom, said tracks arranged in closely spaced-apart, parallel manner . . . ;
> b) at least two upright splash guards, each parallel to a respective one of said tracks, extending upward from each base, and each spaced slightly apart from a respective one of said tracks, . . . each said splash guard forming an open-top channel with a respective one of said tracks and said bases for collecting moisture therein;
> c) at least one collection pan mounted under each said channel to collect moisture from each said channel;
> d) egress means for drawing off the moisture from each of said collection pans.

Patent '651 at 7:27–8:4. As before, the body of the claim sufficiently describes what is being claimed without reference to the preamble. And as before, the preamble provides a name for what is being claimed; in this case, a "weep system."

The preambles for claims 1 and 6 are not claim limitations. The preambles do not recite essential structure or steps, nor are they necessary to give life, meaning, and validity to their respective claims.

**B.    7,997,343 claims 1, 2, 3, and 4**

Defendant argues that the preambles for claims 1, 2, 3, and 4 in the '343 patent are limiting. Plaintiff disagrees. Claims 1, 2, and 3 of the '343 patent are nearly identical to claim 1 of the '651 patent. And just like claim 1 of the '651 patent, the preambles for claims 1,2, and 3 are not limiting. The bodies of those claims define structurally complete inventions without reference to the preamble. And there is no other reason to construe the preamble as limiting.

Claim 4 has different content, but the preamble is still not limiting. The preamble recites "a track assembly for a sliding panel comprising: . . . ." The body of the claim then recites the

1 components of said "track assembly." They include:

2  a) a base having a track . . . , said base further comprising at least one flange extending outwardly from at least one side of the base
3  b) an aperture in said base for . . .
   c) a flexible tube coupled to said aperture for . . .
4  d) at least one support rail configured to be positioned underneath said base; and
   e) at least one alignment clamp configured to engage at least a portion of the [sic] at
5  least one flange and the [sic] at least one support rail . . . .

6 Patent '343 at 7:44–8:4. Just like claims 1–3, the body of the claim recites a structurally complete

7 invention. The preamble neither recites essential structure or steps, nor does it give life, meaning,

8 and validity to a claim.

9 Defendant directs the Court to the prosecution history in support of reading some of the

10 '343 preambles as limiting. A claim preamble can be limiting when there is "clear reliance on the

11 preamble during prosecution to distinguish the claimed invention from the prior art." *Catalina*

12 *Marketing Int'l, Inc.*, 289 F.3d at 808 (citing generally *Bristol-Myers Squibb Co. v. Ben Venue*

13 *Labs., Inc.*, 246 F.3d 1368, 1375 (Fed Cir. 2001)).

14 In an office action before the USPTO, the USPTO rejected claims 3–6, and 8 as obvious

15 and unpatentable over a Japanese patent in view of Patent 3,938,621 (the Bobbit, Jr. reference).

16 (D's Open. Brief, Exhibit C ¶ 10.) And specific to claim 4, the USPTO stated that it would have

17 been obvious "to modify the assembly of [the Japanese Patent] with an additional drainage conduit

18 coupled to the first aperture as taught by '621." (*Id.*)

19 Plaintiff objected to the rejection. Plaintiff argued that when performing the obviousness

20 analysis under 35 U.S.C. § 103, the patentee is presumed to have full knowledge of all prior art in

21 the field of his endeavor. But when it comes to prior art outside that field, the USPTO assumes

22 that the patentee would have knowledge of prior art that would have commended itself to the

23 inventor's attention in considering his problem.

24 And with that, the patentee asserted that the '621 patent and claim 4 were from

25 nonanalogous arts:

26  Bobbit's teachings relating to a drain for fluid collection pit for a vehicle servicing system, and claim 4's recitation of a "track assembly for a sliding panel," i.e. a
27  track assembly for sliding doors with a built-in weep (i.e. moisture condensation collection) system for use in building construction, clearly relate to nonalagous [sic]
28  arts.

1  (D's Open. Brief, Exhibit C ¶ 10.)  And because the prior art was from a nonanalogous field, the
2  patentee argued that the USPTO examiner failed to show that the '621 reference would "commend
3  itself to the attention of an inventor of a sliding door track assembly for building construction."  As
4  a result, the patentee requested the USPTO examiner reconsider his rejection of claim 4.

5  Defendant uses Plaintiff's response to the rejection of claim 4 to argue that the preamble is
6  limiting.  Defendant asserts that Plaintiff quotes the preamble of claim 4—"track assembly for a
7  sliding panel"—to distinguish the prior art reference during prosecution and overcome a claim
8  rejection.  (D's Resp. Brief at 6.)  Such an argument mischaracterizes the prosecution history.

9  As noted before, claim preamble can be limiting when there is clear reliance on it during
10 prosecution to distinguish the claimed invention from the prior art.  But that is not what happened
11 here.  The patentee referred to the claim 4 preamble in order to show that his invention and the
12 '621 patent were in nonanalogous arts.  The reference to the preamble set the stage for the fact that
13 the invention was used in the field of "building construction."  The patentee did not use the
14 preamble in way that defined the claimed invention.  *See Catalian Mktg. Int'l v. Coolsavings.com,*
15 *Inc.*, 289 F.3d 801, 801 (Fed. Cir. 2002).  The prosecution history does not therefore establish that
16 claim 4's preamble should be considered a limitation.

17 The preambles for claims 1–4 are not claim limitations.  The preambles do not recite
18 essential structure or steps, nor are they necessary to give life, meaning, and validity to their
19 respective claims.  The patentee also did not rely on the claim preamble in order to differentiate
20 the invention from prior art.

21 **2.     "Base"**

22 The term "base" appears in both the '651 and the '343 patents.  Plaintiff asserts that the
23 term does not require construction because the meaning of the term is clear.  Defendant proposes
24 the construction "a horizontal surface."

25 The claims utilize "base" in three ways.  First, a "base" always has something extending up
26 from it.  This always includes a track.  *See* Patent' 651 at 6:30, 27–28; Patent '343 at 6:43, 64,
27 7:17.  And sometimes includes an upright splash guard.  *See* Patent '651 at 7:34–36.  Second, the
28 base is part of an "open-top channel" formed by itself, the track, and the upright-splash guard.

1  And finally, claims sometimes require the base to form an inverted 'T' with the tracks and upright
2  splash guards. Patent '651 at 8:6–8, 17–19.

3  The Court construes "base" in accordance with its ordinary meaning—"bottom foundation
4  or support." There is no evidence that "base" is a term of art, and thus claim construction for this
5  term "involves little more than the application the widely accepted meaning of commonly
6  understood words." *Phillips*, 415 F.3d at 1314. Read in context of the claims, the ordinary
7  meaning fits properly in all three situations "base" is used.

8  Defendant's construction—"a horizontal surface"—is based on an improper reliance on the
9  specification. First, Defendant argues that "base" should be limited to embodiments shown in the
10 figures because the patentee uses the phrase "this invention" when describing the figures. The
11 patent states that "Fig. 2 is a sectional view taken through the single track and weep system shown
12 in Fig. 1 depicting the narrow moisture collection channel of this invention." Patent '343 at
13 2:61–63. Defendant argues that Figure 2 depicts a horizontal base and that this should limit the
14 term "base" because the patentee used the phrase "this invention" when referring to the figure.
15 Defendant fails to point out that Figure 2 is a sectional view of Figure 1. And the patentee
16 described Figure 1 as being "an illustrative view of a single track and weep system according to
17 this invention." Patent '343 at 58–59. If Figure 1 is illustrative, and Figure 2 is a cross section of
18 Figure 1, Figure 2 must necessarily be illustrative as well.

19 Defendant also argues that a horizontal base is the only "base" described in the
20 specification, and thus the term should be limited to that embodiment. Limitations should not be
21 imported from the preferred embodiment. *Phillips*, 415 F.3d at 1323. And just because only one
22 preferred embodiment is shown does not mean that said embodiment is the only embodiment.

23 The Court notes also that construing "base" as "bottom foundation or support" still allows
24 a "base" to form the "inverted 'T' shape" described in claims 7 and 10 of the '651 patent: the
25 Court's construction does not limit the shape or orientation of the "base." For example, claim 6 of
26 the '651 patent utilizes a "base" as a support structure for tracks and splash guards. Other than
27 having tracks and splash guards extend upward from the "base," the claim does not limit the shape
28 of the "base" or its orientation. This means that the "base" in claim 6 can be any number of shapes

and be oriented in many different ways with respect to the tracks and splash guards. But in claim 7, when an inverted 'T' is called for, the "base" would necessarily be shaped and oriented such that an inverted 'T' can be formed.

The proper construction of the term "base" is "bottom foundation or support." The term is not a term of art and its ordinary meaning is proper in light of the claims and specification.

**3.     Remaining Issues**

*A.     '651 Patent*

*1.     "egress means for drawing off the moisture from said collection pan"*

The first issue here is whether the claim is subject to construction under 35 U.S.C. § 112, ¶ 6, as a means-plus-function claim. Section 112, ¶ 6 provides that:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. A means-plus-function claim allows patentees to claim an element via its function instead of the structure for performing that function. *Apex Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003).

Whether § 112, ¶ 6 is invoked depends mainly on the language of the claim. "A claim limitation that actually uses the words 'means' invokes a rebuttable presumption that § 112, ¶ 6 applies. By contrast a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, ¶ 6 does not apply." *Id.*

Here, the claim term "egress means" contains "means." The rebuttable presumption that this is a means-plus-function term is triggered. The presumption that § 112, ¶ 6 applies can be rebutted if "the claim term recites no function corresponding to the means or recites sufficient structure or material for performing that function." *Id.* at 1372; *see also Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1376 (Fed. Cir. 2003).

Defendant does not attempt to rebut the presumption. Moreover, the patent supports interpreting this claim term as a means-plus-function claim. The claim term recites a function—"for drawing off the moisture from said collection pan"—and does not recite sufficient structure or material for performing that function.

1  The Court construes the claim term as follows. The function is to remove moisture from
2 the pan. The structure that performs this function is a conduit.

3 *2. "for arrangement on opposite sides of said track base"*

4  The meaning of "for arrangement on opposite sides of said track base" is readily apparent.
5 No construction is necessary.

6 *3. "means for attaching said clamps to said base and to a track support rail located*
7 *underneath said base so as to secure said base to said track support rail"*

8  The claim term contains "means," and Defendant makes no attempt to rebut the
9 presumption that this is a means-plus-function term. The function is to attach the clamp and the
10 base. The structure that performs this function are connecting bolts.

11 *4. "track support rail"*

12  This term should not be construed because its ordinary meaning is readily apparent. *See*
13 *Phillips*, 415 F.3d at 1314.

14 *5. "means for securing said track support rail with respect to said floor"*

15  The claim term contains "means," and Defendant makes no attempt to rebut the
16 presumption that this is a means-plus-function term. The function is to attach the clamp and the
17 base. The structure that performs this function are connecting bolts.

18 *6. "a groove formed in said track support rail opening upward"*

19  This claim term does not require construction. It is readily apparent what "a groove
20 formed in said track support rail opening upward" means.

21 *7. "affixing means for passing through said apertures and into said groove so as to secure*
22 *said alignment clamps to said track support rail"*

23  The claim term contains "means," and Defendant makes no attempt to rebut the
24 presumption that this is a means-plus-function term. The function is to secure the clamp to the
25 track support. The structure that performs this function is a bolt connector which passes through
26 the opening in the clamp and into a securing member or bolt.

27 *8. "alignment clamp"*

28  The joint claim construction chart and the joint claim construction worksheet both indicate

1  that Plaintiff believes this term should be construed.  (Joint Claim Construction Chart Page at 5;
2  Joint Claim Construction Worksheet at 8.)  Plaintiff's position on the matter is perplexing
3  however, because the same term is used in claim 1—the claim on which claim 3 depends—and the
4  parties agree that the term in claim 1 does not require construction.  There is no reason for things
5  to be different here.  Plaintiff rights the boat in its opening brief, however, when it states that the
6  "parties agree this term does not require construction by the court."  (P's Open. Brief at 23.)  The
7  Court agrees; this term does not require construction.

8  *9.      "bolt-capturing nut"*

9         The claim recites "a bolt-capturing nut positioned in said groove and configured for
10  threaded receipt of said bolt."  Patent '651 at 7:6–7.  The claim term "bolt-capturing nut" is clear
11  in the context of the claim.  There is no need to construe it.

12  *10.     "to be adjusted in position"*

13         The term " to be adjusted in position" is construed as "to be moved along the groove prior
14  to securing the bolt and nut in place."

15  *11.     "filter means in said channel for preventing the ingress of debris into said channel and*
16          *said collection pan"*

17         The claim term contains "means," and Defendant makes no attempt to rebut the
18  presumption that this a means-plus-function term.  The function is to prevent debris from entering
19  into the channel and pan.  The structure that performs this function is a longitudinal screen or foam
20  inserted into the channel and structural equivalents.

21  *12.     "said tracks are upright, elongated, narrow gauge plates that form inverted 'T' shapes*
22          *with said respective bases"*

23         Claim 7 claims "[t]he built-in weep system for slidable panels of claim 6 wherein said
24  tracks are upright, elongated, narrow gauge plates that form inverted "T" shapes with said
25  respective bases."

26         "Said tracks" of claim 6 are claimed in the following manner:

27         said tracks arranged in closely spaced-apart, parallel manner, for engaging
           undercarriages of at least two, vertically-oriented panels, one said panel supported
28         on each said track for motion therealong, each of said tracks dividing an area
           thereabout into an exterior section and an interior section

1  Patent '651 at 7:27–33.

2  The claim language doesn't leave much for interpretation and no construction is necessary.
3  Claim 7 limits the claim 6 tracks in two ways. The tracks must first be "upright, elongated narrow
4  gauge plates." Construing this part of the claim term is unnecessary because the meaning is
5  readily apparent. The second limitation is that the tracks must form inverted 'T' shapes with the
6  bases in claim 6. The parties focus their energy, unnecessarily, here. The Court finds that the
7  meaning of "inverted 'T'" is also readily apparent.

8  *13.   "shaped top surface"*

9  Claim 8 recites "[t]he built-in weep system for slidable panels of claim 6 wherein said
10 tracks each include a shaped top surface for engagement with wheels included in the undercarriage
11 of a respective of said vertically-oriented panels." Patent '651 at 8:9–12.

12 Defendant offers a construction—"a shaped top surface means a convex top surface, for
13 engagement with a concave surface on the undercarriage wheels"—but fails to offer any briefing.
14 Plaintiff cites to Webster's dictionary in support of construing "shaped top surface" as "the top
15 surface of the track as a predefined shape, e.g. rounded." (P's Open. Brief at 28.)

16 The claim term requires construction because the plain meaning of "shaped top surface" is
17 not readily apparent. And reading the claim term in context provides little help. "Shaped top
18 surface" further limits the track recited in claim 6, and the shaped top track in claim 8 engages
19 with wheels in the undercarriage of a vertically-oriented panel. This provides no further
20 information with which to construe the term.

21 The specification is also unhelpful. Figure 2 depicts a track with a convex surface.
22 Defendant relies on this to support its construction. This is an impermissible use of the
23 specification to limit the scope of a claim term, however. The patentee describes Figure 2 as a side
24 of Figure 1, and Figure 1 is "an illustrative view" of the invention. There is no evidence that this
25 figure was meant to limit the claim term.

26 Without any prosecution history, there is no other intrinsic evidence to rely on. And
27 without any intrinsic evidence, the only hope is extrinsic evidence. Plaintiff offers *Webster's*
28 definition of "shaped" as "having a shape" or "taking definite form." (P's Open. Brief at 28.)

1  These definitions are unhelpful.  Plaintiff relies on these definitions to construe "shaped top
2  surface" as "the top surface has a predefined shape."  Such a construction does not provide any
3  additional clarity.  The proposed construction changes the tense of "shape" and then rearranges the
4  wording.  "Shape" is no more clear than "shaped."

5  *Webster's* also defines "shape" as "to make fit for."  This makes more sense in light of the
6  claim language.  Claim 6 provides that the tracks are "for engaging undercarriages of . . . vertically
7  oriented panels."  Patent '651 at 7:28–30.  Claim 8 further limits the tracks to "include a shaped
8  top surface for engagement with wheels included in the undercarriage of . . . said vertically
9  oriented panels."  Patent '651 at 8:10–12.

10  In Claim 6, the only limitation is that the tracks engage the undercarriage of the panel.
11  There is no limitation concerning how it performs that requirement.  Claim 8 then requires that the
12  top of the track engage wheels in the undercarriage of the pane.  In this context, it makes sense to
13  construe "shaped top surface" to mean that the top surface is fit for engaging with wheels in the
14  undercarriage.

15  Relying on extrinsic evidence to construe "shaped top surface" does not violate clearly
16  established Federal Circuit law.  The dictionary definition does not conflict with the specification
17  or the claims.  It instead provides clarity for an otherwise undefined claim term.  Construing
18  "shaped top surface" as "a top surface fit for" makes sense.  In context, it would read "[t]he built-
19  in weep system for slidable panels of claim 6 wherein said tracks each include a *top surface fit for*
20  engagement with wheels included in the undercarriage of a respective of said vertically-oriented
21  panels."  This also aligns with Figure 2, which depicts the top of the track having a convex surface
22  fit for engaging the concave wheels found in the under carriage of the vertically-oriented panels.

23  Thus, the proper definition of "shaped top surface" is "top surface fit."  Such a construction
24  makes sense when read in context of the claims.

25  *14.*   *"narrow gauge plates that form inverted "T" shapes with said respective bases"*
26  Claim 10 claims "[t]he built-in weep system for slidable panels of claim 6 wherein said
27  tracks and said upright splash guards are upright, elongated, narrow gauge plates that form
28  inverted "T" shapes with said respective ones of said  bases."  Patent '651 at 8:16–19

1  "Said tracks" and "said upright splash guards" of claim 6 are claimed in the following
2  manner:
3      a) at least two bases, each having a track extending upward therefrom, said tracks arranged in closely spaced-apart, parallel manner, for engaging undercarriages of at
4      least two, vertically-oriented panels, one said panel supported on each said track for motion therealong, each of said tracks dividing an area thereabout into an exterior
5      section and an interior section;
    b) at least two upright splash guards, each parallel to a respective one of said tracks,
6      extending upward from each base . . . .
7  Patent '651 at 7:27–40.
8      The claim construction here is very similar to the claim construction done for claim 7. But
9  instead of just a track, like in claim 7, this claim involves both tracks and bases. And as before,
10 construction is unnecessary.
11 **B.   '343 Patent**
12 *1.   "one support rail"*
13     Patent '343 claims 3 and 4 both claim "at least one support rail configured to be positioned
14 underneath said base." The term "one support rail" does not require construction.
15 *2.   "means for securing said track assembly to the floor"*
16     The claim term contains "means," and Defendant makes no attempt to rebut the
17 presumption that this is a means-plus-function term. The function is to secure the track to the
18 floor. The structure that performs this function is a stud received in the concrete.
19 **C.   Both Patents**
20 *1.   "track"*
21     This term does not require construction; the term's ordinary meaning is readily apparent.
22 Both proposed constructions improperly import limitations from the specification and claims.
23 *2.   "extending upward therefore"*
24     This term does not require construction.
25 *3.   "finished floor"*
26     Defendant does not believe that this term requires interpretation, but notes that if it is to be
27 interpreted, it agrees with the construction "the floor, including the finished surface of the floor."
28 (See Doc. No. 51 at 4.) The Court construes the term "finished floor" to be "the floor, including

1 the finished surface of the floor."

2 *4.  "undercarriage wheels"*

3 The parties agree with Plaintiff's proposed construction. The Court construes "undercarriage wheels" as "the wheels attached to the bottom of the door panel that engage the track and support the door panel for movement along the track."

6 *5.  "vertically-oriented panel"*

7 This claim term raises two issues. The first is construction; the term doesn't require any. Its meaning is clear. The second issue is whether "vertically-oriented panel" is a part of the '651 and '343 inventions. Defendant argues that it is not, and the parties provide copious briefing on the matter. (*See* D's Open. Brief at 8–11, D's Resp. Brief at 2–5, P's Open. Brief at 4–11.) The briefing is for naught, however, as this issue is inappropriate at this time. Suffice it to say, the term "vertically-oriented panel" appears in the body of the claim, and the Court's only prerogative at claim construction is to construe it. Having done so, the Court declines to make any other finding.

15 *6.  "exterior section and an interior section"*

16 This claim term does not require construction. Nothing indicates that "exterior" and "interior" have a special meaning. Plaintiff's construction—"the exterior section means the section outside the building and the term interior section means the section inside the building"—does nothing more than clarify that "exterior" means "outside" and "interior" means "inside." More debatable is Plaintiff's use of "building." The background of the invention indicates that the invention solves a problem when one side of the sliding panels "faces outside the home or building toward the elements." Patent '343 at 1:36–37. But the patent also indicates the use of tracks to "form a temporary wall, to divide a room into smaller rooms, or to provide an opening from one room onto a balcony, onto a patio, onto a swimming pool area and the like." Patent '343 at 1:32–35. None of these uses limit the track to dividing the interior and exterior of a building. The track could also be used to separate an indoor swimming pool from another area. There is nothing in the intrinsic evidence indicating that the terms "exterior section and an interior section" require construction. The proper construction of this claim term is no construction at all.

1 ///

2 7.     "upright splash guard"

3     This claim term is used in several different claims. Patent '343 claims 1, 2, and 3 all claim "an upright splash guard, located parallel to and spaced slightly apart from said track, in said interior section of said area, and topping at the level of the finished floor, said splash guard forming an open-top channel with said track and said base . . . ." Patent '343 at 6:49–53, 7:3–7, 25–29. Claim 6 in the same patent claims in a similar fashion "an upright splash guard, spaced slightly apart from and parallel to said track so as to form an open-top channel between said track and said base . . . ." Patent '343 at 8:12–15.

10     Patent '651 claim 1 claims "an upright splash guard, located parallel to and spaced slightly apart from said track, in said interior section of said area, and topping at the level of the finished floor, said splash guard forming an open-top channel with said track and said base . . . ." Patent '651 at 36–40. Claim 6 in the patent uses the term almost identically.

14     The term "splash guard" is also used in Patent '651 claim 11. Plaintiff provides a separate construction for this claim term. This is unnecessary, however, because this "splash guard" is not a separate claim term. It is actually "said splash guard" of claim 6. And as noted above, the splash guard in claim 6 is the "upright splash guard." Whatever construction is provided in claim 6 should apply to claim 11.

19     Defendant's position is that construction is not required. Unfortunately, it is not clear on the face of the claim what a splash guard is, and claim construction is therefore required.

21     Plaintiff's proposed construction—"the vertical wall spaced towards the interior section from the track"—is flawed because it reuses terminology already found in the claim. Plaintiff's proposed construction and many of the patent claims indicate that the "upright splash guard" is found in the interior section. Accepting Plaintiff's construction would impermissibly render words in the claims superfluous.

26     Defendant's construction is similarly flawed. Defendant proposes that the term be construed as "upright element parallel to the track and extending at a right angle to the base, so as to be capable of forming an inverted T-shape with the base." This too copies significant verbiage

1  from the body of claims; doing so impermissible.

2      After stripping away all the superfluous language we are left with more reasonable
3  constructions. Plaintiff offers that "upright splash guard" is a "vertical wall." Defendant proposes
4  "upright element." Given that the meaning of upright is straight forward and it is found in the
5  claim, upright is preferable to vertical. The remaining question is whether "splash guard" should
6  be a "wall" or an "element." "Element" is more appropriate. Although the figures depict a wall,
7  there is no requirement in the patent that a "wall" is the only embodiment. The proper
8  construction of the term "upright splash guard" should therefore be "upright element."

9  *8.    "and topping at the level of the finished floor"*

10      All the claims that use this term use it in the same way. They claim "an upright splash
11  guard . . . topping at the level of the finished floor." The meaning of the claim term is readily
12  apparent and does not require construction.

13  *9.    "an open-top channel"*

14      Plaintiff argues that no construction is necessary. The Court agrees. Defendant's
15  construction—"channel that is open at the top and that is formed by a horizontal base, a vertical
16  track and a vertical splash guard"—can be split into two parts, and each part is flawed.

17      The first part of Defendant's construction states that "an open-top channel" is a "channel
18  that is open at the top." The clarification is unnecessary. What else could an open-top channel be,
19  if not a channel that is open at the top?

20      The second portion of Defendant's proposed construction is improper because it imports
21  the body of the claim into the construction. Defendant's construction state's that the open top
22  channel is "formed by a horizontal base, a vertical track, and a vertical splash guard." Allowing
23  this construction would impermissibly duplicate portions of the claim. *See Bicon Inc. v.*
24  *Straumann Co.*, 441 F.3d 945, 9540 (Fed. Cir. 2006).

25      Patent '651 claim 1 and Patent '343 claims 1, 2, and 3 all claim an open-top channel in the
26  same manner: "said splash guard forming an open-top channel with said track and said base, for
27  collecting moisture therein." Patent '651 claim 6 claims open-top channel similarly: "each said
28  splash guard forming an open-top channel with a respective one of said tracks and said bases for

collecting moisture therein." And finally Patent '343 claim 6 recites an open top channel as "an upright splash guard, spaced slightly apart from and parallel to said track so as to form an open-top channel between said track and said base, for collecting moisture therein."

All three methods of claiming the open-top channel have one thing in common: they all recite how the open-top channel is formed. It is formed by combining the splash guard, the track, and the base. Defendant's construction would render these portions of the claims duplicative because Defendant's construction also states that the open-top channel is formed by the splash guard, the track, and the base. Defendant's proposed construction should therefore be rejected.

The proper construction of the term "an open-top channel" should be no construction at all. The ordinary meaning of the term is readily apparent.

10. *"mounted under each said channel"*

Although Defendant provides its own construction, Defendant also states that "either proposed interpretation . . . would be acceptable." (Doc. No. 80 at 12.) The parties should have resolved this lack of disagreement themselves. "Mounted under each said channel" is construed "the pan is fixedly carried below the channel."

## CONCLUSION

The parties presented the Court with three serious disputes: 1) whether certain claim preambles are claim limitations; 2) the proper construction of "base"; and 3) the proper construction of "vertically-oriented panel." First, the Court finds that none of the disputed preambles are limiting. Second, the proper construction of "base" is "bottom foundation or support." And third, the term "vertically-oriented panel" does not require any additional construction. The remaining constructions, if the parties find them relevant, can be found in the preceding pages.

**IT IS SO ORDERED.**

DATED: August 10, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge