# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| WEILAND SLIDING DOORS AND WINDOWS, INC.,<br><br>                           Plaintiff,<br><br>  vs.<br><br>PANDA WINDOWS AND DOORS, LLC,<br><br>                         Defendant. | CASE NO. 10CV677 JLS (MDD)<br><br>**ORDER (1) DENYING WEILAND'S SPECIAL MOTION TO DISMISS AND (2) GRANTING WEILAND'S RULE 12(b)(6) MOTION TO DISMISS**<br><br>(ECF No. 70.) |
|---|---|

      This action began on March 30, 2010, when Weiland Sliding Doors and Windows, Inc. filed a patent infringement suit against Panda Windows and Doors, LLC. Panda soon struck back with a counterclaim for intentional interference with prospective business advantage. (Amended Counterclaim, ECF No. 59.)

      Panda's counterclaim is based on three sets of communications. First is a communication between Weiland and a company called Kolbe. The communication took place in June 2007, and the two allegedly discussed Panda's patent issues. The second communication is a press release that Weiland allegedly posted on its website and distributed. The last set of communications is several oral communications Weiland had with potential Panda customers.

      Presently before the Court is Weiland's special motion to dismiss Panda's amended counterclaim pursuant to C.C.P. § 425.16, or in the alternative, F.R.C.P. Rule 12(b)(6) motion to dismiss. (MTD, ECF No. 70.) Also before the Court is Panda's opposition, (Opp'n, ECF No. 86),

1  and Weiland's reply, (Reply, ECF No. 89).  After consideration, the Court **DENIES** Weiland's
2  special motion to dismiss and **GRANTS** Weiland's Rule 12(b)(6) motion to dismiss.

## ANALYSIS

Panda asserts a claim for intentional interference with prospective business advantage. Panda bases its claim on three sets of communications: (1) Counter-Defendant Weiland's communication with Kolbe in 2007; (2) Weiland's press release; and (3) Weiland's oral communications with potential Panda customers.

Weiland moves to dismiss Panda's complaint on two separate grounds.  First, Weiland argues that Panda's intentional interference claim should be dismissed under California's anti-SLAPP statute insofar as the claim is based on Weiland's press release and Weiland's oral communications with potential Panda customers.  Alternatively, Weiland argues that Panda's counterclaim based on all three sets of communications should be dismissed under Rule 12(b)(6).  The Court discusses each argument separately.

**1.    Anti-SLAPP Motion to Dismiss**

Weiland moves to dismiss Panda's intentional interference with prospective business advantage claim pursuant to California Civil Procedure Code § 425.16.  Weiland argues that Panda's claim should be dismissed insofar as it is based on Weiland's Press Release and Weiland's oral communications with Panda's customers.

*A.    Legal Standard*

*1.    Anti-SLAPP Generally*

California Civil Procedure Code § 425.16 allows a defendant to gain early dismissal of causes of action aimed at chilling the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. Cal. Civ. Proc. Code § 425.16(a); *Varian Med. Sys., Inc. v. Delfino*, 106 P.3d 958, 966 (Cal. 2005).  These suits are often referred to as "strategic lawsuits against public participation" or "SLAPP" suits; hence § 425.16 is often referred to as the "anti-SLAPP statute."  *See Balzaga v. Fox News Network, LLC*, 93 Cal. Rptr. 3d 782, 786 n.3 (Cal. Ct. App. 2009).

///

1    "A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). First, the defendant must make an initial prima facie showing "that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002). "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.15, subdivision (e)." *Id.* (quoting *Braun v. Chronicle Publ'g Co.*, 61 Cal. Rptr. 2d 58, 61 (Cal. Ct. App. 1997)) (internal quotation marks omitted).

Second, once the defendant has made a prima facie showing of a protected activity, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* A plaintiff has a probability of prevailing if "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Partker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002) (quoting *Matson v. Dvorak*, 46 Cal. Rptr. 2d 880, 886 (Cal. Ct. App. 1995)) (internal quotation marks omitted). "The plaintiff's showing of facts must consist of evidence that would be admissible at trial." *Hall v. Time Warner, Inc.*, 63 Cal. Rptr. 3d 798, 804 (Cal. Ct. App. 2007). Indeed, "[t]he plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." *Paiva v. Nichols*, 85 Cal. Rptr. 3d 838, 847 (Cal. Ct. App. 2008).

Only when a defendant shows that a claim is based on protected conduct and the plaintiff fails to show a likelihood of success on that claim is it subject to dismissal. *Varian Med. Sys.*, 106 P.3d at 966.

2.    *Commercial Speech Exception*

California Civil Procedure Code § 425.17 lays out several exemptions from anti-SLAPP liability. Among them is § 425.17(c), the "commercial speech exemption." *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1142 (C.D. Cal. 2009). Under this exemption, causes of action arising from commercial speech are exempt from the anti-SLAPP law when:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
> (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business

>operations, goods, or services;
>(3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
>(4) the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

*See Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010).

**B.     Analysis**

Panda opposes Weiland's anti-SLAPP motion on the basis that Weiland's communications, and thus Panda's cause of action, is subject to the commercial speech exemption. (Opp'n 7–12.) Given the parties' postures, the Court's analysis begins with assessing whether Weiland's communications are subject to the commercial speech exemption. If it is, the anti-SLAPP analysis ends. If not, the Court continues with the § 425.16 analysis.

*1.     Press Release*

The Press Release begins by detailing Weiland's lawsuit against Panda for infringement, inducement of infringement, and contributory infringement of patent nos. 7,007,343 and 6,792,651. (Amended Counterclaim, Exhibit C, ECF No. 59.) It then expounds on the innovations that Weiland bestowed on the door and window industry. (*Id.*) The last paragraph discusses the possibility of tripling damages against Panda and a possible permanent inunction barring the manufacture and sale of Panda products. And the Press Release closes with a proposition: "[c]ontractors and dealers who wish to avoid liability for themselves and their customers for selling an infringing product should contact Weiland directly to discuss the possible licensing of non-Weiland patented drainage track." (*Id.*)

Other than the main text, the Press Release also contains other tidbits. It compares Weiland Track and Panda Track side-by-side and identifies several features of the Weiland track: flush track, 16' Tall Liftslides, Hurricane Ratings, and 13 1/2' Tall Bifolds. (*Id.*) It also provides contact information if anyone wanted "more information about [Weiland's] products." (*Id.*)

Panda considers the Press Release a marketing ploy. The Press Release was allegedly sent "at the request of Weiland's dealers," who "believed a Press Release would help their efforts to sell Weiland's products against Panda." (Amended Counterclaim ¶ 18.) Indeed, the "dealers were

not specifically concerned with Panda's sales of the accused infringing drainage track." (*Id.*) Panda alleges that Weiland "placed the Press Release on its website and distributed it to several thousand recipients, including its customers, vendors, and to trade publications that advertised Weiland products and that had not advertised any Panda product." (*Id.* ¶ 17.)

The first question before the Court is whether Panda's intentional interference with prospective business advantage claim based on Weiland's Press Release is exempt from anti-SLAPP liability under the commercial speech exemption. The Court looks toward the four *Simpson* factors. *Simpson Strong-Tie Co.*, 49 Cal. 4th at 30.

First, the Court finds that Panda's cause of action is against a "person primarily engaged in the business of selling or leasing goods or services." *Simpson*, 49 Cal. 4th at 30. Weiland is "in the business of selling . . . liftslide doors, folding doors, swinging doors, and windows." (MTD 6.)

Second, Panda's claim arises out of the Press Release's statements of fact about Weiland's goods and Panda's goods. As an initial matter, Weiland admits that the Press Release consists "of representations of fact about Weiland's goods." (*Id.*) For instance, Weiland uses a "drawing of a Weiland commercial product that include[s] product elements . . . not covered by the patents [at issue]." (Amended Counterclaim ¶ 19.) Panda's claim arises from these representations of fact because the representations allegedly "create confusion and uncertainty on the part of the recipients of the Press Release with respect to the scope of the patents." (*Id.*)

Third, the Court finds that the Press Release was made for the purposes of promoting or securing the sales of Weiland's goods. Even if patent licenses do not constitute goods, the Press Release nonetheless promotes Weiland's goods. All of the statements regarding Weiland's tracks and Panda's tracks are made in connection with directing the audience towards purchasing Weiland's product. The Press Release provides contact information and a website URL for viewers to "learn more" and get "more information" about Weiland products.

And finally the Press Release's intended audience was *"*an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." *Simpson*, 49 Cal. 4th at 30. Weiland allegedly "placed the press

release on its website and distributed it to several thousand recipients, including its customers, vendors, and to trade publications." (Amended Counterclaim ¶ 17.) Notwithstanding the other recipients, the trade publications are sufficient to satisfy the last factor. The publications were an intended audience because Weiland distributed the Press Release to the publications. And the publications repeat the statements to actual and potential buyers or customers.

The Court therefore finds that Panda's intentional interference with prospective business advantage claim based on Weiland's Press Release is exempt from anti-SLAPP liability under the commercial speech exemption. The Press Release satisfies the four *Simpson* factors. Weiland's special motion to dismiss Panda's interference claim based on the Press Release is **DENIED**.

*2.     Oral Communications*

Weiland also moves to dismiss Panda's interference claim insofar as it is based on Weiland's oral communications with potential Panda customers. (MTD 7–8.) Weiland argues that Panda alleges in a conclusory fashion that Weiland's oral communications were for the purpose of securing sales or leases of Weiland's goods or services. (*Id.* at 8.) And thus the counterclaim based on the oral communications is not subject to the commercial speech exemption.

The Court disagrees. It is reasonable to infer from Panda's allegations that Weiland's communications were for the purpose of securing sales or leases of Weiland's goods or services. Panda alleges that Weiland communicated with Panda customers, telling the customers that they could be sued if they purchased Panda products. (Amended Counterclaim ¶ 22.) Importantly, Weiland allegedly made these statements without knowing whether the customers they spoke to were considering the purchase of Panda products that were potentially covered by Weiland products. (*Id.*) Weiland also did not offer the customers the option of obtaining a license to Weiland's patents. (*Id.*) On these allegations, the Court finds it reasonable to infer that Weiland's statements were made for the purpose of driving sales away from Panda and towards Weiland.

The Court finds it reasonable to infer that Weiland's oral communications were made for the purpose of securing sales of Weiland's goods. And to the extent this is Weiland's argument why Panda's claim is not covered by the commercial speech exemption, the Court finds the argument unpersuasive. Weiland's motion to dismiss Panda's interference claim based on

Weiland's oral communications is **DENIED**.

*3. Attorney's Fees*

Having denied Weiland's anti-SLAPP motion, the remaining question is whether Panda should be awarded fees and costs. Attorney's fees and costs can be assessed against a § 425.16 movant only if the "special motion to strike is frivolous or is solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 425.16(c). This requires that "any reasonable attorney would agree such motion is totally devoid of merit." *Decker v. U.D. Registry, Inc.*, 105 Cal. App. 4th 1382, 1392 (Cal. Ct. App. 2003).

The Court finds that Weiland's § 425.16 motion is not frivolous and is not solely intended to cause unnecessary delay. The anti-SLAPP motion is combined with a motion to dismiss. This indicates a good faith effort to dismiss Panda's counterclaim. Consequently, Panda is not entitled to fees and costs.

*C. Conclusion*

Weiland moves to dismiss Panda's intentional interference with prospective business advantage claim pursuant to California Civil Procedure Code § 425.16. Weiland argues that Panda's claim should be dismissed insofar as it is based on Weiland's Press Release and Weiland's oral communications with potential Panda customers. The Court finds that Panda's claim, under both theories, is exempt from § 425.16 under the commercial speech exemption. Weiland's § 425.16 motion to dismiss is **DENIED** in its entirety.

**2. Rule 12(b)(6) Motion to Dismiss**

Weiland also argues that Panda's interference claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Weiland's first argument is broad: Panda's counterclaim fails because Weiland's Press Release, Weiland's oral communications with Panda customers, and Weiland's June 2007 communication with Kolbe do not constitute "wrongful conduct" necessary to assert an intentional interference claim. (MTD 8–9.) Weiland then targets each communication individually. Weiland argues that the Press Release is protected by the litigation privilege; the alleged oral communications do not meet Rule 8's pleading standard; and the June 2007 communication with Kolbe is barred by the statute of limitations and protected by the litigation

privilege.

### A.     *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally known as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim" showing that the pleader is entitled to relief. Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, —U.S.— , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); see also Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Id.*

When a court grants a motion to dismiss, the court should also grant leave to amend

1  "'unless [it] determines that the allegation of other facts consistent with the challenged pleading
2  could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658
3  (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401
4  (9th Cir. 1986)). In other words, the Court may deny leave to amend if amendment would be
5  futile. See *Id.*; *Schreiber Distrib.*, 806 F.2d at 1401.

6  ***B.    Analysis***

7  *1.    Press Release*

8      Weiland argues that recovery based on the press release is barred because of the litigation
9  privilege. The litigation privilege applies to any communication "(1) made in judicial or
10 quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve
11 the objects of the litigation; and (4) that [has] some connection or logical relation to the action.
12 The privilege is not limited to statements made during a trial or other proceedings, but may extend
13 to steps taken prior thereto, or afterwards." *Action Apartment Ass'n, Inc. v. City of Santa Monica*,
14 41 Cal. 4th 1232, 1241 (Cal. 2007) (internal quotations and citations omitted).

15     As a general matter, the litigation privilege can apply to out-of-court statements "to non-
16 parties who have a substantial interest in the outcome of the pending litigation." *Cataline v. Aaron*
17 *Mueller Arts*, 2010 WL 583944, at *4 (N.D. Cal. Feb. 15, 2010) (internal citations and quotations
18 omitted). Panda and Weiland dispute whether the parties who received Weiland's Press Release
19 constitute non-parties with a substantial interest in the outcome of the pending litigation.

20     Panda alleges in its Amended Counterclaim that the Press Release was distributed to
21 Weiland "customers, vendors, and to trade publications that advertised Weiland products and that
22 had not advertised any Panda product." (Amended Counterclaim ¶ 17.) And these parties, Panda
23 argues, have no connection to this case. (*See* Opp'n 16.)

24     The Court finds that those who received the Press Release were parties with substantial
25 interest in the outcome of the pending litigation. Panda's interference claim requires Panda have
26 an economic relationship with the third parties who received the Press Release. *See*
27 *Selfhelpworks.com v. 1021018 Alberta Ltd.*, 2010 WL 5396042, at *4 (S.D. Cal. Dec. 23, 2010)
28 (indicating that an element of intentional interference with prospective business advantage is an

1  economic relationship between plaintiff and some third party).

2  Here the economic relationship between Panda and the third parties is one of buyer and
3  seller of goods. In that context, those who received the Press Release have a substantial interest in
4  the outcome of this litigation. For those that bought or have considered buying the track at issue,
5  they are potentially subject to infringement liability. And those considering business with Panda
6  would want to know what of Panda's products may be subject to infringement liability.

7  The Court therefore finds that the Press Release was sent to non-parties with a substantial
8  interest in the outcome of this litigation. And thus the Court finds that the statements in the Press
9  Release are protected by the litigation privilege. Weiland's motion to dismiss the interference
10 claim based on the Press Release is **GRANTED**.

11 *2.     Oral Communications*

12 Panda alleges that Weiland communicated with several potential Panda customers and
13 warned them of potential patent liability if they purchased products from Panda. (Amended
14 Counterclaim ¶ 22.) Importantly, Panda alleges that Weiland made these representations even
15 when Weiland had no information suggesting that the potential customers contemplated
16 purchasing the Panda drainage track at issue in this action. (*Id.*) And Weiland continued to make
17 these representations even after Weiland knew that Panda stopped selling the potentially infringing
18 track. (*Id.*)

19 Panda contends that Weiland's statements were made for the purpose of confusing and
20 intimidating Panda customers. (*Id.* ¶ 23.) Weiland allegedly misrepresented the possibility of
21 patent liability in order to "persuade potential Panda customers to not purchase from Panda and to
22 instead buy product from Weiland." (*Id.* ¶ 24.)

23 "To establish a claim for interference with prospective economic advantage . . . a plaintiff
24 must plead that the defendant engaged in an independently wrongful act. An act is not
25 independently wrongful merely because defendant acted with an improper motive." *Korea Supply*
26 *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (Cal. 2003). "[A]n act is independently
27 wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory,
28 common law, or other determinable legal standard." *Id* at 1159.

///

Plaintiff fails to allege that Weiland's statements were otherwise proscribed by some "constitutional, statutory, regulatory, common law," or any other determinable legal standard. *Id.* And to the extent that Weiland's statements sound in fraud, Panda's allegations to that effect would be subject to Rule 9(b)'s heightened pleading standard; a standard that Panda's current pleadings cannot satisfy. *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotations and citations omitted)).

The Court therefore finds that Panda fails to plead a cause of action for intentional interference with business advantage based on the alleged oral communications. Weiland's motion to dismiss on this portion of the claim is **GRANTED**.

*3.   Communication with Kolbe*

Panda's allegations regarding Weiland's interaction with Kolbe is reproduced below:

> In June 2007, Weiland communicated with a company called Kolbe regarding Panda and patent issues. Weiland knew, at the time, that Kolbe and Panda had a business relationship. Those communications, which suggested that Panda and Kolbe were violating Weiland.s patent rights, left Kolbe "uneasy" about patent infringement. However, unknown to Kolbe, at the time of those communications, Weiland had not yet formed a view that Kolbe or Panda was infringing either Weiland patent. Kolbe and Weiland thereafter formed a business relationship and some Weiland products—though not the drainage track at issue in this lawsuit—are now sold by Kolbe.

(Amended Counterclaim ¶ 8.)

As discussed prior, Panda must plead "that the defendant engaged in an independently wrongful act." *Korea Supply Co.*, 29 Cal. 4th 1134. And here, Panda fails to allege that Weiland's communications with Kolbe were proscribed by some "constitutional, statutory, regulatory, common law," or any other determinable legal standard. *Id.* The Court therefore finds that Panda fails to plead a cause of action for intentional interference with business advantage based on the Kolbe communication. Weiland's motion to dismiss on this portion of the claim is **GRANTED**.

*C.   Conclusion*

Weiland moves to dismiss Panda's intentional interference with prospective business

advantage based on (1) the Press Release, (2) Weiland's oral communications with potential Panda Customers, and (3) Weiland's November 2007 oral communications with Kolbe. The Court finds that the Press Release is protected by the litigation privilege and that Panda fails to allege that the other two communications constitute independently wrongful acts. As a result, the Court **GRANTS** Weiland's Rule 12(b)(6) motion to dismiss in its entirety.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Weiland's special motion to dismiss and **GRANTS** Weiland's Rule 12(b)(6) motion to dismiss. Panda may file any amended counterclaim within 31 days of the date this order is electronically docketed.

**IT IS SO ORDERED.**

DATED: August 29, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge